## SOUTHERN ADVANCE BAG & PAPER CO., Inc., v. UNITED STATES.
### No. 10325.

Circuit Court of Appeals, Fifth Circuit.
Feb. 11, 1943.

450

See, also, 46 F.Supp. 105.

H. F. Madison, Jr., of Monroe, La., and Esmond Phelps, of New Orleans, La., for appellant.

Malcolm E. Lafargue, U. S. Atty., and John A. Patin, Asst. U. S. Atty., both of Shreveport, La., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On trial before a jury, Southern Advance Bag & Paper Co., Inc., was found guilty on counts 3, 4, and 5 of a twelve count indictment which in the words of the statute charged it and three of its officers with violations of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., §§ 215(a) (1), 216(a). Having heard and denied motions of the Company to set aside the verdict, in arrest of judgment, and for a new trial, the Court fined the Company $3,000 on count 3 and suspended imposition of sentence on the other two counts. From the judgment thus entered this appeal was taken by the Company.

At its plant in Advance, Louisiana, Southern Advance Bag & Paper Co., Inc., was engaged in manufacturing and shipping in interstate commerce paper and paper bags made from pulpwood, the principal ingredient of paper. Approximately 15% of the pulpwood used in the manufacture of paper at this plant was produced by the Company itself, and the other 85% was purchased from other producers. Much of the wood purchased by the Company from independent producers was produced in violation of the minimum wage requirements of the Fair Labor Standards Act of 1938. In substance the charges embodied in counts 3, 4, and 5 of the indictment are that Southern Advance purchased pulpwood from producers, knowing that such producers had paid their employees less than the lawful minimum wage, and had manufactured paper from such illegally produced pulpwood and had shipped it in interstate commerce.

From the testimony given by producers and their employees it is clear indeed that much of the pulpwood purchased by Southern Advance was produced in violation of the Act, and that cutters, haulers, and helpers were paid wages substantially lower than those required by law; that is, less than 25¢ per hour prior to October 24, 1939, and less than 30¢ per hour thereafter.

There is no merit in appellant's contention that the evidence fails to show that it had knowledge of the fact that producers who were selling pulpwood to it were not complying with the provisions of the Act. Shortly after the Act became effective, a committee of producers met with Charles Kelley, General Manager of the Company, and asked for an increase in pulpwood prices, and informed him that with prevailing prices they were not complying and were unable to comply with the minimum wage requirements of the Act. The committee had several other interviews with Kelley, and there is evidence that other officers of the Company, Hunt and Lewis, and a bookkeeper, Porteous, knew that producers were paying their employees substandard wages.

Three shipments of paper are involved in counts 3, 4, and 5 under which Southern Advance was convicted. The defendant asserts that the evidence fails to show that these particular shipments contained pulpwood which had been produced by underpaid employees. Boiled down, the contention is that since legally produced pulpwood and illegally produced pulpwood was not kept separate, but was piled together on a huge woodpile or sent directly to the plant's chipping machine, digestors, cookers, and vats and used in the manufacture of paper without discrimination as to its origin, it was not shown that sticks of illegally produced pulpwood had actually gone into the manufacture of the specific rolls or packages of paper included in the three shipments here involved. The Government was not required to undertake the unreasonable and impossible task of attempting to prove a tracing of particular sticks of pulpwood into particular sticks of paper. The Government carried its burden. The mixing and commingling of the pulpwood and the pulp, and the showing of the process used in the manufacture of paper, warranted a finding that the paper in these shipments contained pulpwood that had been legally produced and some that had been illegally produced.

The co-defendants Kelley, Hunt, and Lewis were found not guilty on counts 3, 4, and 5 of the indictment, and appellant contends that their acquittal was inconsistent with a finding of its guilt. The evidence clearly shows that the Company

through its officers had knowledge that the pulpwood was being produced in violation of the Fair Labor Standards Act, and that the paper manufactured from such illegally produced pulpwood was being shipped in interstate commerce. The evidence is ample to sustain appellant's conviction for violation of the Act, and the fact that co-defendants were not convicted does not relieve it of responsibility for its own unlawful conduct. Sasser v. United States, 5 Cir., 29 F.2d 76; Chiaravalloti v. United States, 7 Cir., 60 F.2d 192. The situation is altogether unlike that in which a single alleged co-conspirator is convicted and all others are acquitted. Cf. United States v. Austin-Bagley Corporation, 2 Cir., 31 F.2d 229.

■■ Appellant's final contention is that it was the "ultimate consumer" of the pulpwood, and "was not the producer, manufacturer or processor thereof"; and that, therefore, the wood purchased and used by it was within the exemption of Section 3(i) of the Act which provides that " 'Goods' * * * does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." To uphold this contention would be to exalt fiction above fact and nullify the plain intendment of the statute. The paper manufacturer is not the ultimate consumer of the pulpwood; it merely takes the wood and by chemical and mechanical processes changes its form and manufactures it into a finished product of commerce. The pulpwood is the principal ingredient of the paper, and is not ultimately consumed until it is used in its finished form, paper. The employees of wood producers were engaged in an occupation necessary to the production of paper, a product of commerce, and were subject to the minimum wage provisions of the Fair Labor Standards Act. See, A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall et al., 63 S.Ct. 125, 87 L.Ed. ——. Having purchased pulpwood from producers with knowledge of the wage conditions under which it was produced, the Company is subject to the penalties and prohibitions of the Act.

The verdict is supported by the evidence and the judgment is in accord with law.

Affirmed.