## UNITED STATES v. UNIVERSAL C. I. T. CREDIT CORP. et al.

### No. 18068.

United States District Court
W. D. Missouri, W. D.

Jan. 15, 1952.

Sam M. Wear, U. S. Atty., Hugh A. Miner, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

James P. Aylward, Jr., Kansas City, Mo., Battle, Fowler, Neaman, Stokes & Kheel, New York City, for defendants.

RIDGE, District Judge.

An information, containing thirty-two (32) counts, was filed in this criminal action, charging defendants with having violated the minimum wage, maximum hours, and record keeping provisions of the Fair Labor Standards Act of 1938, as amended. 29 U.S.C.A. §§ 206(a)(1), 207(a), and 211 (c). Counts 1 to 6 relate to failure to pay minimum wages; Counts 7 to 26, to failure to pay overtime compensation for work performed in a work week longer than forty (40) hours; and Counts 27 to 32, to failure to keep, or the keeping of false, employment records. Two, or more, of the individual defendants are joined with the corporate defendant in each count.

A typical count of the information relating to minimum wages is as follows:

"That the defendant Universal C. I. T. Credit Corporation, a New York corporation, the defendant George P. Neal, its Division Operations Manager, acting in its behalf and interest, and defendant Charles I. Conklin, its Branch Manager, acting in its behalf and interest, employers with-

182

in the meaning of the Fair Labor Standards Act of 1938, as amended by the Fair Labor Standards Amendments of 1949, did, during the workweek hereinafter named, in the City of Kansas City, State of Missouri, within the Western District of Missouri, employ the employee hereinafter named in interstate commerce and in the production of goods for interstate commerce, and did unlawfully and wilfully fail to pay said employee for her work in interstate commerce and in the production of goods for interstate commerce wages at a rate not less than seventy-five (75) cents an hour, contrary to the Act referred to above. 29 U.S.C. 206, 215(a)(2).

"The workweek referred to is the workweek ending May 26, 1950, and the employee referred to is Mary Ellen Way."

As to Count II and subsequent counts relating to minimum wages, the information alleges, in each such count: (1) "Realleges all of the allegations contained in paragraph I of Count I of this Information." (2) "The workweek referred to is the workweek ending May 13, 1950, and the employee referred to is * * *"; then follows the name of a single employee.

As to the charges contained in the information relating to maximum hours, and the keeping of records, the same procedure is followed. Where a certain individual defendant is charged with the corporate defendant, a full statement of the charge is made, and then as to each violation charged against that individual and the corporate defendant the preceding allegations are adopted by reference; the work week, or period of time involved, together with the name of a particular employee, is inserted in each subsequent count.

As to record keeping, the information alleges six different periods of time regarding the work records of four (4) different employees. In two such instances defendants are charged with having made false work records. Each count of the information specifically refers either to a violation of Section 15(a)(2) or 15(a)(5) of the Act, supra. 29 U.S.C.A. §§ 215(a)(2) and 215(a)(5).

■ Defendants lay siege to the information so filed, by way of motion to dismiss; motion to strike; and motion for bill of particulars. The gist of the motion to dismiss may be stated as follows: (1) Information fails to state facts sufficient to constitute an offense against the United States; (2) Information does not state facts sufficient to apprise defendants of what evidence they must be prepared to meet; (3) Allegations of information are indefinite as to particular acts charged, constituting elements of offense; (4) A multiplicity of counts are arbitrarily set forth in the information as to each employee and work week alleged. In light of the conclusion hereafter reached, we need only consider assignments 1 and 4, supra. As to assignment 2, suffice it to say that an information need not reveal the evidence a defendant must meet; Landay v. United States, 6 Cir., 108 F.2d 698, certiorari denied 309 U.S. 681, 60 S.Ct. 721, 84 L.Ed. 1024. As to assignment 3, the same is without merit, as revealed by the ruling hereafter made regarding assignment 1.

■ Under Rule 7(c), F.R.Cr.P. 18 U.S.C.A., an information that describes an offense with such certainty as to inform an accused of the offense charged, without particularizing the details thereof, is sufficient. Tonker v. United States, 85 U.S. App.D.C. 369, 178 F.2d 712; Todorow v. United States, 9 Cir., 173 F.2d 439. In Count I of the information, sufficient facts are alleged to inform the corporate, and individual defendants Neal and Conklin, that they are charged with having violated Section 15(a)(2), of the Fair Labor Standards Act of 1938, as amended, during the work week ending May 26, 1950, with respect to the minimum rate of hourly wages paid to an employee named Mary Ellen Way, at the time employed in the production of goods for interstate commerce as set by Section 206(a)(1) of said Act. The count of the information so alleging states all the facts essential to establish an offense having been committed against the United States. United States v. Southern Advance Bag & Paper Co., D.C., 46 F.Supp. 105, affirmed 5 Cir., 133 F.2d 449; United States v. Barr & Bloomfield Shoe Mfg. Co., D.C., 35 F.Supp. 75.

In Count IV the corporate and individual defendants Neal and Wolfe are likewise informed.

■ In Count VII of the information, facts are alleged that inform the corporate and individual defendants Neal and Conklin, that they are charged with having violated Section 215(a)(2) of the Fair Labor Standards Act of 1938, as amended, during the work week ending December 18, 1948, by requiring an employee, Charles A. Wynn, employed in production of goods for interstate commerce, to work longer than forty (40) hours in that work week without paying said employee for the hours worked in excess of forty (40) at a rate of not less than one and one-half times the regular rate at which said employee was employed, as required by Section 207 of the Act. Count XVIII charges a similar offense as having been committed by the corporate and individual defendants Neal and Wolfe, during the work week ending July 8, 1950, with respect to an employee named John E. Ennis. Said counts of the information allege ample facts to establish a crime as having been committed against the United States by the parties as therein charged.

■ Count XXVII of the information alleges facts that inform the corporate and individual defendants Neal and Conklin that they are charged with having failed to keep records as provided in Section 211(c) of the Fair Labor Standards Act, between April 10, 1950, and May 27, 1950, with respect to an employee named James R. Granger, who was engaged in production of goods for interstate commerce and who was within the coverage of Sections 6 and 7 of said Act, in violation of Section 15(a)(5) thereof. The corporate and individual defendants Neal and Wolfe are likewise so informed in Count XXIX of the information. So revealing, said counts allege facts constituting an offense against the United States. Consequently, there is no merit to assignment 1 of the motion to dismiss.

■ A more serious matter is presented by assignment 4, supra. The unit selected by Congress for measuring the minimum compensation required to be paid employees covered by the Fair Labor Standards Act of 1938, as amended, in Section 6 thereof, 29 U.S.C.A. § 206, is the hour of work. In Section 7 of the Act, 29 U.S.C.A. § 207, the unit selected for determining whether overtime payments are due, is the work week. Tennessee Coal, Iron & R. R. Co. v. Muscoda, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949; Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. As a result of the standards so contained in the Act, it is the contention of the Government that as to each employee that an employer fails to pay minimum compensation for a given hour's work; and, as to each work week that an employer fails to pay to an employee overtime compensation, a separate offense is committed by the employer in violation of the provisions of the Act. It is defendants' contention that nowhere in the Fair Labor Standards Act of 1938, as amended, or the regulations promulgated thereunder, can any period of time, such as an "hour" or "work week" be found as a unit of measurement constituting separate and single criminal violations under the Act, irrespective of the employee involved or the time during which an offense alleged thereunder occurred. In other words, defendants contend that the Fair Labor Standards Act does not proscribe, as a separate and individual crime, each distinct hourly failure on the part of an employer to pay minimum wages, or each failure to pay overtime compensation to an employee within the coverage of the Act, or the failure to keep individual work records, as to each employee, but only defines a single crime for the doing of any such unlawful acts; and that as is defined in Section 215(a)(2) and (5) of the Act. 29 U.S.C.A. § 215(a)(2, 5). If defendants' contention is correct, then the information here contains many duplicitous counts and they should be dismissed.

Section 215(a)(2) of the Act, supra, makes it "unlawful for any person * * (2) to violate any of the provisions of section 206 or section 207 of this title, or any of the provisions of any regulation or order of the Administrator issued under

section 214 of this title;" subsection 5 thereof, makes it an offense "to violate any of the provisions of section 211(c) of this title, or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect." Section 216 of the Act, 29 U.S.C.A. § 216, prescribes the penalties, civil and criminal, for violations of the Act. Subsection (a) of Section 216 is as follows: "(a) Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection."

Subsection 216(b) prescribes the civil liability of an employer who violates the provisions of Section 206, or Section 207; but we are not here concerned therewith, except to note that a civil cause of action is thereby created in favor of *each* employee affected by any such violation of the Act.

■■ It must be kept in mind that the Fair Labor Standards Act is remedial legislation. It is apparent from the character thereof that it was the intent of Congress that "industries engaged in commerce or in the production of goods for commerce" were to be covered thereby and required to comply with the remedy thus afforded, "to correct and as rapidly as practicable to eliminate the conditions" in industry and in interstate commerce that Congress had found to be "detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers." 29 U.S. C.A. § 202. To compel compliance with such legislation, Congress, in Section 215 of the Act, has defined certain prohibited acts, and declared it unlawful for any person, defined in Section 203(a) of the Act, to act contrary thereto. As to any person who so violates the provisions of Section 215, Congress prescribed a criminal penalty in Section 216(a) of the Act, supra. The question arises whether the offense so defined is susceptible of being divided into two or more offenses, each open to a separate prosecution, because of multiple failures on the part of an employer within a given period of time, to comply with the several provisions of the Fair Labor Standards Act, and regulations promulgated thereunder, as set forth in Section 215. To determine whether Congress thereby intended specific acts committed contrary to the mandate of certain sections of the Act, to be punishable, or whether the violation of any one of the provisions of Section 215, constitutes merely a single offense, the test must be "whether the individual acts are prohibited, or the course of action which they constitute", is prohibited. . "If the former, then each act is punishable separately. * * * If the latter, there can be but one penalty." Blockburger v. United States, 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306.

■ It seems clear when the purpose of the Fair Labor Standards Act, supra, is considered, that in defining prohibited acts thereunder, and prescribing a punishment for commission of the same, the Congress intended to make a "course of conduct" and not "individual acts" the gravamen of the offenses defined in Section 215 thereof. "The motive and purpose of the * * * regulation (is) to make effective the Congressional conception of public policy that interstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions * * *." United States v. Darby, 312 U.S. 100, 115, 61 S.Ct. 451, 457, 85 L.Ed. 609. In Section 202 of the Act, Congress manifests an intent that it is the regulation of "industries engaged in commerce or in the production of goods for commerce" that is being brought within the coverage thereof. By Sections 206 and 207 of the Act, a standard as to "minimum wages" and "maximum hours" is established by which "industries engaged in commerce or the production of goods for commerce" must abide "with respect to all employees engaged in [such] commerce." 312 U.S.

at page 117, 61 S.Ct. at page 458. "Congress (thereby) adopted the policy of excluding from interstate commerce all goods produced for the commerce which [did] not conform to the specified labor standard[s]." 312 U.S. at page 121, 61 S.Ct. at page 460.

To uniformly maintain that standard, the Congress made it unlawful for a person to engage in interstate commerce, or the production of goods for interstate commerce, if that person did not comply with Sections 206 or 207 of the Act. Thus it is seen that the prohibited act fixed by Congress is not to singly violate Sections 206 or 207 of the Act, but the failure to comply therewith while engaging in interstate commerce, or the production of goods for commerce. "Section 15(a)(2) and Sections 6 and 7 (of the Act) require employers to conform to the wage and hour provisions with respect to *all* employees engaged in the production of goods for interstate commerce." 312 U.S. at page 117, 61 S.Ct. at page 458. For an employer to be so engaged and not comply with the standard set as to *all* employees producing goods for such commerce is for that person to violate a standard set by Congress. Inherently, such prohibition could only relate to a "course of conduct" and not individual acts constituting that course of conduct.

The mandate in Section 206 of the Act that "(e)very employer * * * pay to *each* of his employees" a minimum wage; and that contained in Section 207, that "(n)o employer shall * * * employ *any* of his employees" who are engaged in interstate commerce without paying overtime compensation, when considered in the light of the prohibited act defined in Section 215(a)(2) can only be construed as meaning that each employer engaged in such commerce must conform to the above wage and hour standard of the Act with respect to every one of his employees, and if he does not do so, then a singular offense is committed in violation of the Act, irrespective of the number of employees involved, and regardless of the period of time over which such action continues. The offense so committed is not divisible by the number of employees as to whose employment the employer fails to comply with the wage and hour provisions of the Act. Failure to comply as to one or all of such employees produces a single result, the violation of a "prohibited act."

When the penalties provided by Congress to be imposed upon a person who violates the standards set in the Fair Labor Standards Act are considered, it becomes more manifest that what Congress was attempting to control by such legislation was a "course of conduct" and not individual acts committed contrary to specific provisions of the Act. In Section 216, it is provided that "any person who willfully violates any of the provisions of Section 215 * * shall upon conviction thereof be subject to a fine" etc. There can be no imprisonment as a part of punishment for such violation except after a conviction of a prior offense thereunder. A fine of not more than $10,000.00 may be imposed for a first offense. Congress in so providing certainly did not intend that a fine of such imposing proportions would be assessed, for a first offense, where only the failure to pay one of several employees a portion of a weekly wage is shown, and that failure to pay a different employee similar wages during the same period of time, would subject an employer to imprisonment for that singular act as a second offense.

The penalty prescribed in Section 216 (a) of the Fair Labor Standards Act is one to be imposed for a "course of conduct" pursued in violation of the provisions of Section 215. Section 215 prohibits a number of different courses of conduct that cannot be pursued by "persons" engaged in interstate commerce or the production of goods for commerce. In light of the remedy sought to be corrected, the commission of any one of those prohibited acts is an offense, subject to the penalty provided in Section 216, for such conduct. Therefore, the several offenses defined in Section 215(a)(2) and (5) of the Fair Labor Standards Act are what may be termed "continuing offenses" the violation of which is committed by a single impulse, no

matter how long the action continues, for which an indictment or information lies for each offense so defined. In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658; Clawans v. Rives, 70 App.D.C. 107, 104 F.2d 240, 122 A.L.R. 1436; 15 Am.Jur., Sec. 381, p. 56.

 That is not to say that the failure to abide by the standards set up by the Act as to a single employee could not, standing alone, be the subject of a criminal prosecution. The failure to comply as to "each employee" is a measurement of criminal liability, but when so measured it is not the "overt act" committed as to each employee, but the "course of conduct" that is the gravamen of the offense.

Being a crime of that nature we think that when an indictment is returned, or an information is filed, charging conduct in violation of the standards set up by the Fair Labor Standards Act; but one entire offense, whether longer or shorter in point of duration; or whether it consists of one or a number of particular acts; is to be charged, respecting each prohibited act defined in Section 215 thereof. "The offense is (to be) laid as a continuing one and a single one for all the time covered by the indictment". In re Snow, supra, 120 U.S. at page 282, 7 S.Ct. at page 559. Hence the prosecution is for all overt acts committed in consequence of the continuing crime, occurring prior to the time the prosecution is instituted. For that offense, a fine may be assessed under Section 216(a). Subsequent prosecutions for similar acts would bring into play the "imprisonment" penalty of said Section. That must have been the intent of Congress, to enforce compliance with the standards set in the Fair Labor Standards Act.

 The information in its several counts charges a separate crime for each violation by defendants of Sections 206, 207 and 211(c) of the Act. As informed against, the defendants, if found guilty on all counts, are subject to a fine of $270,000. Congress clearly did not intend any such consequences as a result of criminal prose-

cutions under the Fair Labor Standards Act. The offense with which defendants are charged is not the violation of Sections 206, 207 and 211(c), but with violating Section 215(a)(2) and (5). Section 215(a) (2) and (5) prohibits an employer from committing one, as well as a series of acts. If a series of acts are committed in violation thereof, they are not to be broken down so as to subject an employer to the single penalty that is provided in Section 216(a) for each such act. The elements of the offense defined in Section 215(a)(2) and (5) are a violation of other sections of the Act. Such offenses may occur by commission of simultaneous acts, or a series of acts, but if committed, only one crime is involved and that as to each of the prohibited acts. We are dealing here with a statute that defines single prohibited action on the part of an employer. That action may be constituted of various acts. Prosecution therefor should not be carved out of several instances where defendants failed to pay minimum wages, overtime compensation, or failed to keep records as required by the Act, and subject defendants to multiple punishment therefor. As Judge Yankwich said, in United States v. Harris, D.C., 26 F.Supp. 788, 789:

"When a statute denounces a series of acts or the doing of several things, but attaches one penalty only to them, the prosecutor, if he chooses less than all, and is unsuccessful, cannot then prosecute again under the portions of the statute which he chose to omit.

"* * * 'The law does not permit a single individual act to be divided, so as to make out of it two distinct, indictable offenses. (Citing cases.) Although when a man has done a criminal act, the prosecutor may carve as large an offense out of the transaction as he can. Yet he is not at liberty to cut but once.'

"Behind these principles is the fundamental thought that the prosecutor should not split one crime and prosecute it in parts."

Criminal statutes are to be strictly construed. There is no such thing as a con-

structive offense. To warrant punishment for the violation of a criminal statute, the statute must spell out the offense in the plainest terms. Fasulo v. United States, 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443. Section 215(a)(2) does not authorize prosecution for each failure to pay a minimum "hourly" pay to each employee during the same period of time, or each failure to pay overtime compensation as is here attempted to be done in the several counts of the information. Such counts considered in gross allege three distinct violations only of the Fair Labor Standards Act, to-wit: a failure to pay minimum wages; a failure to pay overtime compensation; and, a failure to keep records as required by the "standards" set forth in the Fair Labor Sandards Act, supra.

Therefore, Counts II, III, IV, V and VI of the information are dismissed as charging duplicitous violations relating to minimum wages, with that as charged in Count I.

Counts VIII to XXVI, inclusive, are dismissed for the same reasons; i. e., duplicitous charges as to that alleged in Count VII, relating to overtime compensation. Counts XXVIII to XXXII are dismissed for duplicity in charging violations as to record keeping provisions of the Act, as alleged in Count XXVII.

The allegations of Counts VI, XVIII and XXIX, in which defendant Frank E. Wolfe is charged, in addition to the other defendants, will be considered as charging that defendant in connection with the charges contained in Counts I, VII and XXVII, retained in the information.

The second paragraph of each count not retained in the information shall be considered as charging an "overt act" respecting the charge to which it relates. Thus defendants are sufficiently informed as to all "overt acts" for which the prosecution is here made.

Defendants' several motions to strike and for bills of particulars are by the Court overruled. Defendants' several motions to dismiss are sustained as above indicated.