## UNITED STATES *v.* UNIVERSAL C. I. T. CREDIT CORPORATION ET AL.

No. 47.   Argued November 18–19, 1952.—Decided December 22, 1952.

*John F. Davis* argued the cause for the United States. With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Murray, Beatrice Rosenberg, J. F. Bishop, William S. Tyson* and *Bessie Margolin. Philip B. Perlman,* then Solicitor General, was on the Statement as to Jurisdiction.

*Melbourne Bergerman* argued the cause for appellees. With him on the brief were *Aaron Lewittes, Seymour Kleinman* and *James P. Aylward.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case arises on an information under §§ 15 and 16 (a) of the Fair Labor Standards Act, 52 Stat. 1060,

1068–1069, as amended, 63 Stat. 910, 919, 29 U. S. C. §§ 215, 216 (a), charging the defendant corporation, its division operations manager and two successive branch managers with violations of the minimum wage, overtime, and record-keeping provisions of the Act.[1] Thirty-two counts were laid: six for failure under § 6 of the Act to pay minimum wages, twenty for violation of the overtime provisions of § 7, and six for failure to comply with the requirements for record-keeping under § 11. Counts 1–6 charge minimum wage violations in six separate weeks, one per week, but only as to one employee in any one week and only as to three employees in all. Counts 7–26 charge overtime violations in twenty separate weeks, one per week. A total of eleven employees are involved, two violations having been charged as to each of nine employees. Counts 27–32 charge record-keeping violations as to four employees, two violations as to each of two employees

---

[1] The criminal enforcement provisions of the Fair Labor Standards Act are §§ 15 and 16. Section 16 provides a maximum fine of $10,000 for "[a]ny person who willfully violates any of the provisions of section 15 . . . ." Section 15 makes it "unlawful for any person . . . (2) to violate any of the provisions of section 6 or section 7 . . . (5) to violate any of the provisions of section 11 (c) . . . ." Section 6 provides, "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce . . . not less than 75 cents an hour; . . . ." Section 7 provides ". . . no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Section 11 (c) requires the employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order . . . ."

being charged. Section 16 of the Act subjects an employer, offending for the first time, to a maximum fine of $10,000 for violation of any provision of § 15, and would, the District Court assumed, authorize a fine of $320,000 upon conviction under this information.[2]

Rejecting a reading of § 15 whereby the prosecutor could treat as a separate offense each breach of the statutory duty owed to a single employee during any single workweek,[3] the District Court granted defendant's motion to dismiss all but three counts of the information. The court held that it is a course of conduct rather than the separate items in such course that constitutes the punishable offense and ordered consolidation of the separate acts set forth in the information into three counts, charg-

---

[2] 102 F. Supp. 179, 186, modified by Order dated March 10, 1952, R. 20.

[3] The Government urges that the Act be construed "to punish each failure to comply with each duty imposed by the Act as to each employee in each workweek and as to each record required to be kept." Brief for United States, p. 10. However, in none of the first 26 counts, charging minimum wage or overtime underpayments, were similar violations charged as to two employees in the same week, so that it would be sufficient in this case to urge that the violations may be split according to the workweek, rather than also according to the employee. As to the last six counts, charging record-keeping violations, it might have been possible for the Government to urge less than that each record required to be kept is a separate offense. With one minor exception, violations were alleged as to at least two employees in every workweek for which record-keeping violations were charged. The workweek was not the unit of prosecution, since the periods of time in these six counts range from about seven weeks to over six months. But the employee was also not the unit, since although violations as to each employee were made into separate charges, two employees are the subject of two charges apiece.

Whatever differences exist between the minimum necessary to sustain this particular information and the claim made by the Government are immaterial, in view of our disposition of the case.

ing one violation each of §§ 6, 7 and 11.[4]  To review this decision, the Government brought the case here under the Criminal Appeals Act, 34 Stat. 1246, 18 U. S. C. § 3731.

The problem of construction of the criminal provisions of the Fair Labor Standards Act is not easy of solution.  What Congress has made the allowable unit of prosecution—the only issue before us—cannot be answered merely by a literal reading of the penalizing sections.  Generalities about statutory construction help us little.  They are not rules of law but merely axioms of experience.  *Boston Sand Co.* v. *United States,* 278 U. S. 41, 48.  They do not solve the special difficulties in construing a particular statute.  The variables render every problem of statutory construction unique.  See *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 402.  For that reason we may utilize, in construing a statute not unambiguous, all the light relevantly shed upon the words and the clause and the statute that express the purpose of Congress.  Very early Mr. Chief Justice Marshall told us, "Where the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived . . . ."  *United States* v. *Fisher,* 2 Cranch 358, 386.  Particularly is this so when we construe statutes defining conduct which entail stigma and penalties and prison.  Not that penal statutes are not subject to the basic consideration that legislation like all other writings should be given, insofar as the language permits, a commonsensical meaning.  But when choice has to be made between two readings of what conduct Congress

---

[4] Appellee does not urge in this case that § 15 prescribes only one offense even if there are three kinds of violations.  Such an argument seems to have been made and was rejected, as to distinct requirements under two different sections of the act there involved, in *Blockburger* v. *United States,* 284 U. S. 299, 305, where the penal provision applied to "any person who violates or fails to comply with any of the requirements of this act."

has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication.

The penal provision of the Fair Labor Standards Act is only part of a scheme available to the Government and to the employee for enforcing the Act. The preventive remedy of an injunction and individual or class actions for restitution and damages in § 16 (b) are not only also available. They are the remedies more frequently invoked and more effective in achieving the purposes of the Act. Of course the various remedies must be read in relation to each other. But we are asked here in addition to infer that an employer's failure to perform his obligations as to each employee creates a separate criminal offense because the provisions for civil liability in § 16 (b) expressly recognize a right in the individual employee to maintain a separate action against his employer for restitution and damages. The argument cuts both ways. If Congress had wanted to attach criminal consequences to each separate civil liability it could easily have said so, just as it had no difficulty in stating explicitly that the unit for civil liability was what was owing to each employee. Instead of balancing the various generalized axioms of experience in construing legislation, regard for the specific history of the legislative process that culminated in the Act now before us affords more solid ground for giving it appropriate meaning.

When originally introduced in Congress, the bill out of which the Fair Labor Standards Act evolved had two separate penalty provisions, one for underpayments in violation of § 6 or § 7 and one for failure to comply with the record-keeping provisions of § 11.[5]  Each provision

---

[5] See §§ 27 (a) and 27 (b) in S. 2475 and H. R. 7200, 75th Cong., 1st Sess.

set the maximum fine at $500 and explicitly defined what constituted a separate offense. As to §§ 6 and 7 the employee was the unit of criminal offense and as to § 11 each week of violation was a separate offense.[6] After the measure wound its way through a long legislative process there resulted consolidation of the two penalty provisions, elimination of the separate offense clauses, and substitution of $10,000 for $500 as the maximum fine. These rather striking changes would in themselves afford justifiable ground for giving the less harsh and therefore more reasonable construction to the offense-creating portions of the legislation. In addition, we have illuminating statements in both houses concerning the separation of offenses. Although the separate offense clause for record-keeping violations was deleted early in the legislative process, the other separate offense clause was attacked in debate precisely because it would authorize the sort of multiplication of offenses by the number of employees that the information before us represents.[7] Indeed, multiplication in this information goes beyond what even the original bills would have authorized. Un-

---

[6] In § 27 (a), the clause read: "Where the employment of an employee in violation of any provision of this Act or of a labor-standard order is unlawful, each employee so employed in violation of such provision shall constitute a separate offense." In § 27 (b), the clause was: ". . . and each week of such failure to keep the records required under this Act or to furnish same to the Board or any authorized representative of the Board shall constitute a separate offense."

[7] See 81 Cong. Rec. 7792; 81 Cong. Rec. 9507; 82 Cong. Rec. 1828. Force is added to these statements by the fact that one was made by a member of the House who proposed the amendment which was adopted, by vote on division, specifically to delete the separate offense clause of § 27 (a) (then § 22 (a)). 82 Cong. Rec. 1828–1839. The bill thus came to the Conference from the House with both separate offense clauses deleted, but from the Senate with only the clause of § 27 (b) deleted. Both versions still provided a maximum fine of $500. The Conference accepted the House version, with neither

derpayments of the same employees are split into separate counts of the information, and record-keeping violations during the same week are split to serve as the basis of separate counts.

It would be self-deceptive to claim that only one answer is possible to our problem. But the history of this legislation and the inexplicitness of its language weigh against the Government's construction of a statute that cannot be said to be decisively clear on its face one way or the other. Because of the history and language of this legislation, the case is not attracted by the respective authority of two cases pressed upon us. *In re Snow,* 120 U. S. 274, and *Blockburger* v. *United States,* 284 U. S. 299.

The district judge was therefore correct in rejecting the Government's construction of the statute. The offense made punishable under the Fair Labor Standards Act is a course of conduct. Such a reading of the statute compendiously treats as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single "impulse," a conception recognized by this Court in the *Blockburger* case, *supra,* at 302, quoting Wharton's Criminal Law (11th ed.) § 34. Merely to illustrate, without attempting to rule on specific situations: a wholly unjustifiable managerial decision that a certain activity was not work and therefore did not require compensation under F. L. S. A. standards cannot be turned into a multiplicity of offenses by considering each underpayment in a single week or to a single employee as a separate offense.

---

separate offense clause, but raised the maximum fine to $10,000. See S. 2475, 75th Cong., 1st Sess., §§ 23 (a), 23 (b), as reported from Committee, July 8, 1937; 81 Cong. Rec. 7957; H. R. Rep. No. 2182, 75th Cong., 3d Sess. 5; 83 Cong. Rec. 7450; Conference Report, § 16 (a), 83 Cong. Rec. 9249.

However, a wholly distinct managerial decision that piece workers should be paid less than the statutory requirement in terms of hourly rates, see *United States* v. *Rosenwasser*, 323 U. S. 360, involves a different course of conduct, and so would constitute a different offense. Thus, underpayments based on violations of the statute as to these piece workers could not be compounded into a single offense with unrelated underpayments which resulted from the decision that a certain activity was not work, merely because the two kinds of underpayments occurred in the same workweek or involved the same employee. Whether an aggregate of acts constitute a single course of conduct and therefore a single offense, or more than one, may not be capable of ascertainment merely from the bare allegations of an information and may have to await the trial on the facts.

This information is based on what we find to be an improper theory. But a draftsman of an indictment may charge crime in a variety of forms to avoid fatal variance of the evidence. He may cast the indictment in several counts whether the body of facts upon which the indictment is based gives rise to only one criminal offense or to more than one. To be sure, the defendant may call upon the prosecutor to elect or, by asking for a bill of particulars, to render the various counts more specific. In any event, by an indictment of multiple counts the prosecutor gives the necessary notice and does not do the less so because at the conclusion of the Government's case the defendant may insist that all the counts are merely variants of a single offense.

By affirming this order without prejudice to amendment of the information, we do not mean to suggest that amendment to increase the number of offenses may be made after trial has begun. But the Government is not precluded from now amending the information either to meet the exigencies of the evidence or to charge as sep-

arate offenses separate courses of conduct as to each substantive provision. All we now decide is that the district judge correctly held that a single course of conduct does not constitute more than one offense under § 15 of the Fair Labor Standards Act.

Without prejudice to amendment of the information before trial if the evidence to be offered warrants it, the order below is

*Affirmed.*

Mr. Justice Douglas, dissenting.

I think the question whether an employer has violated the criminal provisions of the Act is determined by reference to what he has done to a particular employee. The Act does not speak of "course of conduct." That is the Court's terminology, not the Act's. The Act requires the employer to pay "each of his employees" not less than 75 cents an hour, prohibits him from employing "any of his employees" for more than 40 hours a week unless overtime is paid, and requires him to keep records of "the persons employed by him" and the wages, hours, etc. 29 U. S. C. §§ 206, 207, 211 (c), as amended. And the Act makes it unlawful for an employer to violate "any of the provisions" of those sections. 29 U. S. C. §§ 215, 216 (a).

It therefore seems clear to me that if an employer pays one employee less than 75 cents an hour *or* fails to pay overtime to one employee, *or* fails to keep the required records for one employee, a crime has been established, if *scienter* is shown. And it seems equally clear to me that if an employer wilfully fails to pay one employee the minimum wage, *and* wilfully fails to pay him the required overtime, *and* wilfully fails to keep the required records for him, three crimes have been committed. The crime is defined with reference to the individual employee. The crime may be a single, isolated act. It may or may not

be recurring or continuous. The violation may affect one employee one week or one month and another employee another week or another month; and it may affect one employee in one way, another employee in a different way. The violations may be continuous, and follow a set pattern; or they may be sporadic and erratic. The Act does not differentiate between them. Nothing is said about "course of conduct." Perhaps a committee of Congress would be receptive to the suggestion now made. But it should be received there, not here. Of course, horrendous possibilities can be envisaged under almost every law. But the prosecutors who enforce this Act, the grand juries who hear the evidence on violations, and the District Courts who apply the sanctions have to date not made these criminal provisions oppressive and beyond reason. Yet until this case no court, so far as I can learn, has ever had the inventive genius to suggest that "course of conduct" rather than the "employee" is the unit of the crime.