**Ernest King BRAMBLETT,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 12813.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 2, 1955.

Decided Jan. 19, 1956.

Writ of Certiorari Denied
April 9, 1956.

See 76 S.Ct. 658.

Bazelon, Circuit Judge, dissented.

Mr. Edward Bennett Williams, Washington, D. C., with whom Mr. Murdaugh Stuart Madden and Miss Agnes A. Neill, Washington, D. C., were on the brief, for appellant.

Mr. Lewis Carroll, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., and William Hitz and William F. Becker, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Appellant, whom we shall hereinafter refer to as defendant, was convicted under each of seven counts of an indictment charging violations of 18 U.S.C. § 1001 (1952), 62 Stat. 749 (1948).[1] On appeal

1. This statute reads as follows: "Whoever, in any matter within the jurisdic- United States knowingly and willfully fal- tion of any department or agency of the

sifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes

his principal contention is that the prosecution was barred by the three-year statute of limitations then applicable. See 18 U.S.C. § 3282 (1952), 62 Stat. 828 (1948).

The earlier history of the case is set forth in considerable part in United States. v. Bramblett, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594. The District Court, 120 F.Supp. 857, had granted a motion in arrest of judgment on the theory that the Disbursing Office of the House of Representatives was not a "department or agency of the United States" within the meaning of 18 U.S.C. § 1001. See note 1 supra. The Supreme Court disagreed and reversed, after which the District Court sentenced the defendant and the present appeal was taken to this court.[2]

Insofar as now material[3] the indictment charges that defendant did knowingly and wilfully falsify by a scheme a material fact. The indictment then explains how this was done. Certain allegations are common to each count. These are that to accomplish the scheme defendant on or about August 27, 1949, as a member of Congress, presented to the Disbursing Office of the House of Representatives in Washington a Clerk-Hire Allowance form dated August 27, 1949, to take effect September 1, 1949, in which he designated Margaret M. Swanson to be a clerk to him in the discharge of his official and representative duties, thereby entitling her to receive compensation at the basic rate of $4700 per annum; and that the defendant's purpose in the scheme was to convert to his own use the compensation authorized by this form to be paid to Margaret M. Swanson. The first count alleges in addition that on or about June 30, 1950, in a matter within the jurisdiction of a department and agency of the United States, namely, the aforementioned Disbursing Office of the House of Representatives, the defendant did knowingly and wilfully falsify by a scheme a material fact by continuing in full force and effect up to and including June 30, 1950, the designation contained in said document. The material fact falsified by the scheme is alleged in the first count to be the representation that Margaret M. Swanson during June, 1950, was a clerk to defendant in the discharge of his official duties and entitled to receive compensation as such. Each of the six remaining counts contains similar allegations, except that a different month is given for the continuing in force and effect of the designation, and for the material fact falsified by the scheme. These months are July, August, September, October, November and December of 1950.

The proof is not in dispute. In substance it is that the designation was made and remained throughout the times alleged, and that Margaret M. Swanson received for each of the specified months the payments called for under the designation. The checks representing the payments were deposited in a joint account of herself and her husband. Periodically the husband turned over to defendant the amount thus paid to Margaret M. Swanson. Defendant paid the husband an amount equal to the increased income tax of the Swansons.

The contention with respect to the statute of limitations is that the crime was complete on or about August 27, 1949, when the designation was made, and that this was more than three years prior to the indictment, which was returned on June 17, 1953. Defendant argues that the designation, assuming it to be false, was a completed falsification when made and was the only falsification, because, it is said, there is no allegation

or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

2. Appellant was given a suspended sentence of from four to twelve months, fined $5,000, and placed on probation for one year.

3. At the direction of the District Court appellant was acquitted on certain counts not before us.

or evidence of any subsequent representation by the defendant as to Mrs. Swanson's status. From this it is argued that when defendant was convicted of falsifying her status he was of necessity convicted only of falsely representing in 1949, more than three years prior to the indictment, that she was his clerk.

We are unable to accept this view of the case. As we understand it the indictment does not merely charge the making of a false statement. To be sure, the statute would cover such a charge. See note 1 supra. But this indictment specifies a violation of a different portion of the statute. It alleges that defendant did "falsify by a scheme a material fact" by wilfully and knowingly continuing the incorrect designation in effect into periods less than three years before the date of the indictment. The material fact falsified by the scheme is said by the indictment to be defendant's representation that Mrs. Swanson was his clerk at the times stated in the several counts and that she was then entitled to receive compensation. The factual allegations are sustained by the undisputed proof to which we have referred. A continuing crime of falsification by a scheme is thus charged and proved, and the period of limitations did not begin to run until the scheme ended. This did not occur when the designation was filed on August 27, 1949. We may assume that some crime defined in the statute was then completed, and that the period of limitations began to run against that crime. But not so of the particular crime charged in this indictment.

We have here a situation comparable to some conspiracies in the sense that the scheme continued over a period of time, as conspiracies often do. Of course there is no conspiracy charged; only one person is indicted. But we see no greater legal obstacle to an indictment based on the continuing scheme of one person than on the continuing conspiracy of more than one. Defendant's conduct in lodging the designation with the Disbursing Office, thus falsifying a material fact, and in leaving it on file, thereby continuing the falsification in order repeatedly to partake of the fruits of the scheme, fairly falls within the terms of section 1001.

Defendant urges that the Government's theory that an offense was committed each of the seven months specified in the seven counts leads to an untenable postulate, namely, that a separate offense was committed each moment after the form was filed. In the end, however, this contention does not help defendant, for the alternative to this postulate is not, as defendant would have it, that a single crime was completed when the form was filed on or about August 27, 1949, but that defendant's course of conduct constituted a single offense which continued into December, 1950. The portion of the statute upon which the indictment rests we think does reveal a Congressional intent to reach a pattern of conduct rather than to penalize a series of acts which manifest the pattern. In construing a criminal statute doubts should be resolved in favor of a construction that avoids subjecting an offender to multiple convictions by reason of a single unified pattern of behavior even though the behavior continues over a period of time. See United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260. See, also, In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658; United States v. Kissel, 218 U.S. 601, 607–608, 31 S.Ct. 124, 54 L.Ed. 1168; State v. Licari, 132 Conn. 220, 43 A.2d 450; Kirchheimer, "The Act, the Offense and Double Jeopardy," 58 Yale L.J. 513, 540, and cases there cited. Absolving defendant of multiple offenses, however, does not absolve him entirely. We construe the statute, as applied to the facts of this case, to support an indictment of defendant for a single offense which continued until the scheme ended in December, 1950. And the fact that the indictment instead charges seven offenses does not require reversal. The Supreme Court dealt with a similar problem in Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23. There the indictment in each of several counts charged

a separate crime of conspiracy on the theory that the different criminal objects of a single agreement gave rise to separate crimes. The Court concluded that only one conspiracy existed notwithstanding its various objects and that therefore convictions on each of the several counts were erroneous. But the Court did not set aside the action of the jury or grant a new trial. It simply remanded for resentencing, so that the punishment could be reduced to come within that allowable for conviction of a single conspiracy. The theory of the case seems to be that several verdicts of guilty on counts charging as separate crimes conduct which in fact comprised only one crime, amounted to a verdict of guilty of that one crime. This theory is equally applicable here. But since the sentence, unlike that in Braverman, is well within the maximum which could have been imposed for a single violation of the statute, and since all the counts deal with a closely interrelated factual situation, no remand for resentencing is required.[4]

We have examined each of the cases relied upon by counsel for defendant. They add cogency to his contention with respect to the statute of limitations. Nevertheless we believe none is controlling and each is distinguishable. For example, in Marzani v. United States, 83 U.S.App.D.C. 78, 168 F.2d 133, affirmed 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431, the indictment charged the making of false representations, not a falsifying by a continuing scheme. When the falsifications were made the crime charged was complete. In Bridges v. United States, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557, the indictment was for a conspiracy to make, and the making of, a false statement in a naturalization proceeding more than three years prior to the indictment. It may be said that the United States relied upon the statement

within the three-year period by continuously extending to Bridges the benefits of citizenship; but in the case at bar it is not simply that reliance was placed upon the falsification within the limitations period but that the scheme itself continued into that period. Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196, merely held that a conspiracy continues only until the final overt act in pursuance of it. Here the conduct of defendant which constituted the scheme did not terminate until the scheme itself ended. The cases of United States v. Gottfried, 2 Cir., 165 F.2d 360, certiorari denied 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139; United States v. Anzalone, 3 Cir., 197 F.2d 714, and Butzman v. United States, 6 Cir., 205 F.2d 343, certiorari denied 346 U.S. 828, 74 S.Ct. 50, 98 L.Ed. 353, may stand for the proposition that a criminal act which by legislative definition is transitory in nature cannot be extended over a period of time simply because its effects continue, but they are irrelevant to this case where the statute allows the criminal act to be a continuing offense quite apart from the duration of its effects. And we think United States v. Irvine, 98 U.S. 450, 25 L.Ed. 193, which, with Marzani, is most heavily relied upon by defendant, falls into the same general class of cases. There the Court merely construed a statute condemning the wrongful withholding of a pension as not intended to support an indictment for continuing to withhold it. Here, however, the statutory terms are different. The Irvine decision is not inconsistent with our construing the statute before us to include within its terms a continuing scheme operative over a period of time. That such conduct can be punished consistently with the beneficent policy of statutes of limitations we think is indicated by such cases as Hyde v. United States, 225 U.S. 347, 367–370, 32 S.Ct. 793, 56 L.Ed.

---

4. Assuming that we have a discretion to reverse and remand for the limited purpose of permitting the District Court to resentence, cf. Nelms v. United States, 94 U.S.App.D.C. 267, 215 F.2d 678, we would not be disposed to do so in the absence of a request from the defendant. If so advised he may by motion or petition make such a request prior to issuance of our mandate.

1114; United States v. Kissel, 218 U.S. 601, 607–608, 31 S.Ct. 124, 54 L.Ed. 1168, and Brown v. Elliott, 225 U.S. 392, 400–401, 32 S.Ct. 812, 56 L.Ed. 1136, all referred to in Pendergast v. United States, 317 U.S. 412, 419–420, 63 S.Ct. 268, 87 L.Ed. 368, where, in *dicta*, a continuous fraudulent scheme is discussed as constituting a crime. See, also, Braverman v. United States, supra.

We have considered also defendant's only other contention, namely, that the designation of Margaret M. Swanson "to be" his clerk, "to succeed" another, and "to receive" the stated compensation, said designation "to take effect" September 1, 1949, were representations concerning future facts, and therefore not the proper basis for a charge of falsification. In view of the use made of the form after it was filed we think this contention is not meritorious.

Affirmed.

BAZELON, Circuit Judge (dissenting).

It is clear that Bramblett was engaged in a conspiracy to defraud the United States under 18 U.S.C. §§ 286 [1] or 371 [2] (1952); that the conspiracy was begun by his false designation of Mrs. Swanson as his clerk; and that an overt act evidencing the conspiracy occurred each time she accepted a salary check. But Bramblett was not charged with defrauding or conspiring to defraud the United States. Instead he was charged with a "falsification by scheme" under 18 U.S. C. § 1001 (1952),[3] commonly known as the false statements statute.

Because a predecessor statute reached only "false papers presented in * connection with a claim against the Government," § 1001 was enacted to reach falsifications which involved no pecuniary loss to the United States, such as papers intended to conceal the illegal transportation of "hot oil." United States v. Bramblett, 1955, 348 U.S. 503, 507, 75 S. Ct. 504, 507, 99 L.Ed. 594. See also United States v. Gilliland, 1941, 312 U.S. 86, 93–95, 61 S.Ct. 518, 85 L.Ed. 598. Nothing in the legislative history suggests that that section was also intended to serve as an alternative for reaching the continuing offense of conspiracy to defraud the United States. Yet I think the majority employs that section here for such purpose.

In my view, the offense charged here was completed for purposes of the statute of limitations when Bramblett filed the designation of Mrs. Swanson. What made the designation false when he filed it was the scheme that she would not perform services as his clerk. The fact that he thereafter reaped the fruits of the falsification achieved "by [this] scheme" does not convert that offense into a continuing one.[4]

1. 35 Stat. 1095 (1909), as amended, 40 Stat. 1016 (1918), 48 Stat. 996 (1934), 52 Stat. 197 (1938), 62 Stat. 698 (1948).

2. 35 Stat. 1096 (1909), as amended, 58 Stat. 752 (1944), 62 Stat. 701 (1948).

3. 48 Stat. 996 (1934), as amended, 62 Stat. 749 (1948).

* Senate Report No. 1202, 73d Cong., 2d Sess. and 48 Stat. 996.

4. The situation is not too unlike that in Pendergast v. United States, 1943, 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368, involving a fraudulent scheme begun by a falsification beyond the three-year statutory limit but consummated within it. The Supreme Court held that where the charge was contempt for misbehavior in the presence of the court, the three-year period began to run from the date of an initial misrepresentation to the court, and was not extended by "continuous cooperation in concealing the scheme until its completion" by the distribution of ill gotten gains. Id., 317 U.S. at page 419, 63 S.Ct. at page 271. In the Court's view, only if the charge were of broader "sweep" than the contempt at issue, e. g., for " 'corruptly' obstructing or conspiring to obstruct 'the due administration of justice,' " would such a fraudulent scheme have constituted a continuing offense. Id., 317 U.S. at page 420, 63 S.Ct. at page 271. On the same analogy, I think the offense of falsification by scheme is restricted in scope, and lacks the sweep of a conspiracy charge which would embrace appellant's conduct within the statutory period.