**UNITED STATES of America,
Plaintiff,**

v.

**ST. REGIS PAPER COMPANY,
Defendant.**

United States District Court
S. D. New York.
March 15, 1960.

See also 24 F.R.D. 366.

**864**

S. Hazard Gillespie, Jr., U. S. Atty. for Southern Dist. of New York, New York City, for plaintiff (William F. Suglia, Asst. U. S. Atty., New York City, Daniel J. McCauley, Jr., Alan B. Hobbes, J. B. Truly, Federal Trade Commission, Washington, D. C., of counsel).

LeBoeuf, Lamb & Leiby, New York City, for defendant (Horace R. Lamb, H. Richard Wachtel, Douglas W. Hawes, New York City, of counsel).

RYAN, Chief Judge.

This suit arises under Sections 9 and 10 of the Federal Trade Commission Act. 15 U.S.C.A. §§ 49 and 50. Section 9 vests the District Court with jurisdiction to issue orders in the nature of mandamus commanding any person or corporation to comply with any order of the Commission made in pursuance of the Act. Section 10 gives any District Court of the United States, in which a corporation has its principal office or is doing business, jurisdiction of suits by the United States for the recovery of forfeitures, if the corporation shall fail to file any special report required by the Act within the time fixed for filing same and such failure shall continue for 30 days after notice of such default.

Defendant, St. Regis Paper Company, a New York corporation with its principal place of business in this District, was made the subject of a Federal Trade Commission resolution, dated January 6, 1959, which directed an investigation of the organization, business, conduct, practices and management of the defendant for the purpose of uncovering possible violations of Section 7 of the Clayton Act, as amended (15 U.S.C.A. § 18). Pursuant to this resolution and Section 6(a) and (b) of the F.T.C. Act (15 U.S.C.A. § 46(a) and (b)), the Commission issued orders to each of six corporations,[1] including defendant, requiring each to file a Special Report, containing specified data and documents, with the Commission, within 30 days after service of the order. The orders, with a copy of the January 6th resolution, were served according to statute. Since each of the other corporations served is wholly owned by defendant and since defendant was in possession of all the data and documents required, defendant was responsible for complying with the notice to file for all corporations served.

Defendant moved, before the Commission, to vacate the orders and for other appropriate relief. After first denying this motion, the Commission, on March 5, 1959, permitted defendant to file a brief in opposition to their issuance. After consideration of the matter, the Commission denied the motion on May 6, 1959, and later denied defendant's motion for reconsideration.

On June 4, 1959, the Commission adopted a second resolution in which it asserted that it was "in the public interest to broaden its investigation" and on June 8, 1959, the Commission issued orders to defendant, Cupples-Hesse Corp. and Northwest Door Co. requiring the filing of Special Reports. Since the latter two corporations were wholly owned by defendant, it was again responsible for the filing of all reports. Some of the information ordered to be furnished has been filed but the Commission alleges that this was not sufficient and St. Regis refused to comply further.

Under the compulsion of the last three orders and under subpoena issued at an earlier date and not relevant here, defendant has supplied a large volume of

1. The Corporations served, beside defendant, were Growers Container Corp., I. J. Kress Box Co., Inc., Pacific Waxed Paper Co., Pollock Paper Corp. and Rhinelander Paper Co.

data and documents. The Commission has supplied the Court with a stipulation of deficiency which lists the items required by the order which, it is alleged, have not been supplied. Documentary evidence and stipulated facts were received by the Court at a trial without a jury, which was concluded on January 26, 1960.

In sum then, we are asked to enforce nine orders requiring Special Reports and to levy forfeitures of $100 a day, under Section 10 of the F.T.C. Act, on defendant corporation for the delay in complying with each of the two orders addressed to it personally. The forfeiture on the January 9, 1959 order is claimed to have run from July 20, 1959 and the forfeiture on the June 8, 1959 order is claimed to have run from August 23, 1959.

The purpose of the Commission's orders was to determine whether the defendant, by its acquisitions of the stock or assets of other corporations, had violated Section 7 of the Clayton Act which prohibits the acquiring, in whole or in part, of the stock or assets of "one or more corporations engaged in commerce * * * where * * * the effect of such acquisition * * * may be substantially to lessen competition, or to tend to create a monopoly."

This is the first time a Section 6(b) order has ever been used by the Commission prior to the filing of a complaint. It is said that the use of the process of 6(b) has never before been necessary because of voluntary disclosures. Since 1950 over 400 alleged violations of Section 7 have been investigated and because of the full or substantial compliance with the requests of the Commission on a voluntary basis, there has never been a need for the use of either an order under Section 6(b) or a subpoena under Section 9 of the F.T.C. Act. In the continuing investigation of defendant, however, the Commission has felt it necessary to use both types of process.

Defendant's principal contention is that the Commission has acted beyond its statutory power in the issuance of a 6(b) order in the circumstances of this case. It is claimed that 1) 6(b) was never intended to be used in the investigation of an alleged antitrust violation and 2) that, in any event, the special report was never meant to be used in a pre-complaint investigation and was never meant to elicit the detailed information required by the orders in suit. We cannot agree with either of defendant's contentions.

Section 6(b) is written in the broadest possible terms. We can find no words of limitation whatsoever and hold that 6(b) is not limited and can be used in antitrust investigations. The Commission concededly has power and certain duties in the antitrust field, including the investigation of alleged Section 7 violations, and we find nothing that would deny the use of the power conferred by Section 6(b) for any purpose within the scope of those duties. In fact, the Supreme Court has "[found] a good deal which would warrant our concluding that § 6 was framed with the pre-existing antitrust laws in mind." United States v. Morton Salt Co., 1950, 338 U.S. 632, 649, 70 S.Ct. 357, 367, 94 L.Ed. 401.

In its argument concerning the intention of the enacting Congress and the kind of reports contemplated, defendant relies heavily on the legislative history of the Federal Trade Commission Act of 1914. Although making a very plausible and well documented argument, defendant overlooks the fact that the United States Supreme Court has already reviewed this legislative history and rejected almost the same argument.

In United States v. Morton Salt Co., supra, the Commission used a 6(b) order to require a compliance report under a cease and desist order. Morton Salt Co. argued that the legislative history of Section 6(b) showed that it was only intended to be used in requiring statistical and financial reports as had earlier been filed with the Bureau of Corporations. The Supreme Court rejected this interpretation. Defendant in the present case uses the same history to argue the same

point although adding, in deference to the Morton Salt decision, compliance reports to the area of proper subject matter under 6(b). However, the words of the Supreme Court are much broader. It was held that 6(b) could be used in furtherance of any duty which the Act empowered the Commission to perform. The Act is "to be read as an integral whole" and 6(b) is just another broad grant of investigative power to be used as an alternative to the subpoena power of Section 9. We are bound by this liberal interpretation found in Morton Salt and cannot limit its holding to the narrow confines urged by defendant.

Simply because the Commission has not seen fit to use the 6(b) order previously in no way destroys or inhibits its power to do so for powers, if granted, are not lost by being allowed to lie dormant and the Supreme Court, in Morton Salt, said that this power granted to the Federal Trade Commission has not been forfeited by non-use.

■ Defendant also argues that the Federal Trade Commission Act contains no provision for the judicial review of 6(b) orders and that defendant's only course is to incur the forfeitures and wait for the Commission to proceed in the District Court for the collection of the money. It is alleged that this violates due process. This argument has no merit. Mr. Justice Jackson suggested in Morton Salt, although the question was not before him for decision, that either the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202, or the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., might be used by a defendant to initiate judicial review of a 6(b) order. We feel that the Administrative Procedure Act (5 U.S.C.A. § 1009) supplied adequate review for an order of the type before us.

■ We therefore hold that the orders validly issued and proceed to a study of the subject matter of the orders themselves.

■ Defendant argues that the Commission has no right to copies of census

reports and customers' lists since these documents are privileged. We find no basis in law for sustaining this position. In fact, as to census reports, a summary glance at the cases cited by defendant reveals they do not hold or even remotely allude to the position St. Regis advocates. We believe that the analogy to income tax returns (original returns are privileged, copies in the hands of the taxpayers are not) used in United States v. Continental Can Company (Civil Action No. 112–387, See transcript page 67) is sound for our purpose and we hold that the copies are not privileged and should be supplied.

■■ Defendant's motion to vacate the orders, its submission of briefs at the time the motion to vacate was heard by the Commission and its efforts to secure oral argument constituted not only an attempt to quash the orders entirely but also an attempt to modify the orders as issued. Therefore, we have in this suit "reasonable efforts before the Commission itself to obtain reasonable conditions", United States v. Morton Salt Co., supra, 338 U.S. at page 653, 70 S.Ct. at page 369, which will enable the Court to consider the question of arbitrary excessiveness. The Supreme Court has supplied us with the test to be applied. The reports must relate to (1) an inquiry within the authority of the agency; (2) the demand must not be too indefinite; and (3) the information sought must be reasonably relevant. We hold that the Commission has the authority and that the information sought is relevant. We question, however, the definiteness of the demands.

■■ Requests for information, contained in subpoenas or 6(b) orders, which require compliance under threat of penalties or forfeitures, must be drawn with certainty. When one is subject to a penalty or forfeiture for refusing to answer, what is demanded must be so crystal clear as to leave no room for confusion. This is a basic tenet of criminal law (statutory clarity as to what is forbidden or what is proscribed before punishment or penalty can be imposed)

and we feel it is equally valid in the field of civil process which seeks to apply a penalty or enforce a forfeiture. Cf. Jordan v. De George, 1951, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886; United States v. Ryan, D.C., 128 F.Supp. 128; 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335. Certainly the forfeiture of $100 a day for each order, present in this case, is sufficiently analogous to a criminal sanction. A reading of these orders reveals over two dozen instances of vague and uncertain questions to which anyone would have trouble giving a definitive answer. A few examples will suffice to emphasize our point.

In the first order addressed to St. Regis, the Commission asks defendant to "describe any changes in the character and scope of Superior's operations since St. Regis acquired control of the company." We feel this is not a definitive question! What operations are the Federal Trade Commission interested in? Sales? Productions? Promotion? Personnel?

In the same order, the Commission asks for "all statistical summaries or reports prepared by a trade association, individual or firm" based on types of data mentioned earlier in the order. We think that this is too broad and indefinite to permit compliance and feel that this type of information may not even be within the knowledge of St. Regis.

In the second order to St. Regis (June 8, 1959), the Commission requires St. Regis to "Explain how the business and productive facilities of Northwest Door and Cupples-Hesse Corp. would be fitted into the operations of your company." This question speaks for itself.

These questions proceed upon the assumption that the Commission may require a defendant to investigate itself. We hold that it may not.

If the Commission is going to make use of this 6(b) process, it must realize from the outset that the utmost care in preparing these orders is a necessity. The character of the process itself requires that certain limits be placed upon the content of the orders to protect those to whom the orders are directed.

When requiring statistical information under 6(b) orders, the Commission must be content with those statistics which are kept in the regular course of business or are readily available. Questions seeking opinions or delving into the subjective motives of third persons, examples of both appearing in the orders in suit, are no more proper under a 6(b) order than under the Section 9 subpoena.

We feel that Section 6(b), as read in conjunction with the whole act and in particular with Section 9, was designed as a means of convenience to both the business community and the Commission. This report procedure is an aid to the busy executive in that he is not required to spend his time away from his administrative and executive duties while attending hearings in person. We do not, however, think this report was designed to replace the searching examination which might be conducted if the executive were to attend in person under subpoena, especially in this case where defendant is required not only to answer to this searching examination but to interpret the purpose and meaning of the questions as well.

The orders in suit might have been drafted with more attention to the details and specifications of information sought. The path of least resistance should not be followed when drawing questions to be answered under compulsion of process. It should not be left to a busy, overburdened and undermanned Court to interpret and edit these demands. We have neither the staff nor the time to assume this burden.

Defendant urges that having found portions of the orders indefinite, we must strike down the entire set. From a practical point of view, this seems silly since it would require the Commission to redraw and reissue the same orders. We believe that ordering partial compliance is a more practical method of dealing with these orders and

feel that Section 6(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1005 (c), affords us ample legal authority to modify these orders. Cf. N. L. R. B. v. Anchor Rome Mills, Inc., 5 Cir., 197 F.2d 447; F. C. C. v. Cohn, D.C., 154 F.Supp. 899.

In addition to the questions which we hold do not pass the test laid down by the Supreme Court, plaintiff admits that the orders in question also require information which has already been supplied. We need not decide whether this alone would have justified non-compliance, but make mention of it only because of the confusion which the issue caused.

The Commission's specification of default has been rigorously challenged by defendant. St. Regis in its answer to the specification takes great pains to point out the vast amount of information it has supplied for which the Commission gives no credit. After reading the answer, we saw merit in defendant's contention and found it necessary to go over the entire situation and come to our own conclusions as to what was answered by defendant, making use of the material supplied by St. Regis in its answer.

We therefore order compliance with those portions of the orders which are enforceable and have not been answered. For the sake of clarity we will first list those questions which we find so indefinite as to be unenforceable and then, since it appears the shorter task, list all questions which are to be answered.

### Unenforceable Questions

Order No. 1—St. Regis—1h, 3j, 3k, 5j, 5k, 6j, 7j, 8j, 11.

Order No. 2—Growers Container—3c, 7, 8.

Order No. 3—Kress Box—3c, 7, 8.

Order No. 4—Pacific Waxed Paper—3c, 6, 7.

Order No. 5—Pollock Paper—3c, 6, 7.

Order No. 6—Rhinelander Paper—3c, 6.

Order No. 7—St. Regis—5.

Order No. 8—Cupples-Hesse—3c, 7.

Order No. 9—Northwest Door—3c, 7.

### Questions to Be Answered

Order No. 1—1c, 1e, 1f, 1g, 1i; 2a, 2c; 3b, 3d, 3f, 3h(2), 3i; 5a, 5b, 5c, 5f, 5h, 5i; 6a, 6b, 6c, 6d, 6e, 6f, 6h, 6i; 7a through 7h; 8a, 8b, 8d, 8e(1), 8e(3), 8f, 8h, 8i; 9b; 10b.

Order No. 2—2b, 2d; 3a, 3b, 3d; 4b, 4c, 4d; 5b; 6a, 6b, 6c.

Order No. 3—2b, 2d; 3a, 3b, 3d; 5c, 5d, 5e; 6c(3).

Order No. 4—2b; 3a, 3b, 3d; 4a, 4b, 4c, 4d, 4e, 4f; 5b, 5c.

Order No. 5—2b, 2e; 3a, 3b, 3d; 4b(2), 4c, 4e; 5a, 5b, 5c, 5d, 5f.

Order No. 6—2b, 2c, 2d, 2e; 3a, 3b, 3d; 4b(2), 4c.

Order No. 7—1a, 1c; 2a, 2b; 3a, 3b, 3c; 4a, 4b.

Order No. 8—2b; 3a, 3b, 3d; 4b; 5b(4), 5b(5); 6a, 6b.

Order No. 9—1; 2a, 2b, 2c, 2d; 3a, 3b, 3d; 4a, 4c; 5a, 5b; 6.

The Government also seeks a statutory forfeiture of $100 a day for each of two orders addressed personally to St. Regis Paper Co.

All nine orders were issued during a short period of time. (The January 6, 1959 orders were subject to motions to vacate until May 6, 1959.) They all related to the same investigation. In fact, the second order (June 8, 1959) recites that it is issued to "broaden its investigation" of defendant. In the final analysis, defendant was required to supply all the information. We feel that all of the orders requested information which made up one special report and what was being investigated was one "course of conduct" (Cf. United States v. Universal C.I.T. Credit Corp., 1952, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260). Therefore, if forfeitures were to be exacted, only one hundred dollars a day in forfeiture would be granted. To require defendant to pay on more than one order in these circumstances would be duplicitous.

Since, however, we hold that the orders on which the Government bot-

toms its claim for forfeitures are partially defective and since we only enforce those portions of the orders which we find unobjectionable, defendant had a valid reason for challenging these orders as prepared. Therefore, we find the Government has no right to forfeitures under the circumstances.

Let a final order and judgment be settled on notice directing compliance in accordance with our conclusions and dismissing the claim for forfeitures upon the merits.