THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ISMAEL TORRES AVILÉS ET AL., Defendants and Appellants.

Nos. CR-63-406, CR-63-407.    Decided September 30, 1964.

*Gustavo L. Marrero Ledesma* for Ismael Torres Avilés. *José Rafael Gelpí* and *Sergio A. Peña Clos* for Santos Rodríguez Capeles. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The Prosecuting Attorney filed an information against appellants Ismael Torres Avilés and Santos Rodríguez Capeles for violation of the Bolita Act, Act No. 220 of May 15, 1948, without specifying the section violated, which read as follows:

"Said defendants . . . was caught carrying, transporting, and having in his possession lists of numbers or letters, notebooks of numbers and letters, notebooks, tickets and other similar objects, which may be utilized or were used in said unlawful game of bolita, clandestine lotteries, and connected with the practice thereof, plus the amount of $3.75, said money being connected with said illegal games."

The facts narrated clearly charge a violation of § 4 of said Act, 33 L.P.R.A. § 1250, which insofar as pertinent reads as follows:

"Any person caught *carrying or transporting or who has in his possession* for any reason any *papeleta, billete, ticket,* notebook, list of numbers or letters, slips, or implements which can be used for the unlawful games of *bolita, bolipool,* combinations . . . and any person who *possesses, sells,* or in any way *trans-*

*ports* these or any other similar ones which may be utilized or used in said unlawful games . . . shall be guilty of a public offense . . . ." (Italics ours.)

The only evidence introduced by the prosecuting attorney to establish the commission of the crime to which the information refers consisted of the testimony of the state policeman, William Surén Millán, certain documents including some photographs, and the money seized from Ismael Torres Avilés. Because it is of decisive importance in this case we copy the most outstanding parts of the aforementioned witness' testimony:

"Q. Tell me, witness, said day of December 15, 1962, in what specific place were you serving as detective or policeman?

A. After rendering service I came to the corner of the plaza to wait for transportation to go to Yabucoa and while waiting for transportation I noticed that Ismael Torres Avilés was sitting, that is, standing on the corner of the platform and *said Ismael Capeles[1] arrived and said, 'Ismael, jot down number 059 for me.' Then, said man drew out a ball-point from his shirt pocket and he jotted down number 059 on the fleshy part of his amputated arm*, is that right? That I could notice because I came nearer, he could not see that I was near him. Then he had another series of numbers jotted on his arm.

Then I proceeded to tell him to accompany me to police headquarters.[2] He asked me on the way to police headquarters to give him an opportunity and I told him: 'but why should I give you an opportunity?' He told me 'no, because you know that is not bolita.' And I told him, 'well, you explain that to the judge and I cannot give you that opportunity, said opportunity is granted by an official superior to me in rank.'

,    .    .    .    .    .    .    .

Prosecuting Attorney:

Tell me, who was the person who told you to jot that number for him?

A. Ismael Capeles.

---

[1] It refers to codefendant Santos Rodríguez Capeles.

[2] It refers to codefendant Ismael Torres Avilés.

Q. Ismael?

A. Capeles, that man over there, Ismael Rodríguez Capeles.

Q. And who was . . . who is Santos Rodríguez Capeles?

A. That is, that man over there, that is, I did not know that man prior to said date, since then to the present I know him as Capeles, is that right? I know said person since that date to the present.

Q. Do you affirm to the court that that was the person who asked him to jot down the number for him?

A. Yes, sir.

Q. Do you know if he gave him any money?

A. He gave him half a dollar.

Q. For half a dollar?

A. Yes, sir.

. . . ." (Italics ours.)

On cross-examination he also testified that he searched Ismael Torres Avilés and seized several lists and a ticket— which he called "small ticket"—of the kind used in the bolita game and a certain amount of money in cash. Said objects were admitted in evidence.

It is clear that the evidence was sufficient to find Ismael Torres Avilés guilty of the facts charged against him, because it was established that he had in his possession, transported and sold a number of the bolita jotting it on the stump of his right amputated arm.

■■ But is this sufficient evidence to support the conviction of codefendant Santos Rodríguez Capeles? All that can be inferred from the agent's testimony is that Rodríguez requested Tomás Avilés to jot down a certain number and that the former delivered half a dollar to the latter. It was not established that the latter delivered to the former any countersign or ticket nor that the policeman saw it in his hands or in his possession even if he did not take possession of it. Cf. *People* v. *Seda*, 82 P.R.R. 695, 706 (1961). We agree that the facts stated constituted a violation of § 9, 33 L.P.R.A. § 1255, which consists in purchasing or in any way acquir-

ing any *billete, papeleta,* ticket or implements used or utilized in the bolita game, but not § 4, *supra,* of which violation he was accused and against which said appellant had to defend himself. See, *Stirone* v. *United States,* 361 U.S. 212 (1960); *cf. United States* v. *Universal C.I.T. Corp.,* 344 U.S. 218 (1952). It cannot be said either that the crime provided in § 9 is included in the one punishable by § 4. *Cf. People* v. *Ramos,* 85 P.R.R. 553 (judgment of May 28, 1962).

■ However, the representative of the Solicitor General argues that the action of Rodríguez in "inciting" Avilés to sell him a number of the bolita converts him into coauthor, and he refers to certain language in our opinion in *People* v. *Seda,* 82 P.R.R. 695, 707 (1961), in which we decided, to confront a plea of entrapment, that the undercover man was not an accomplice of the violator of the Bolita Act because in his action "there was absolutely no criminal intention." But we had already made clear and stated in *People* v. *Pérez,* 83 P.R.R. 221, 225 (1961), that the discussion regarding the absence of criminal intent was intended to answer the contention aforementioned and that "if that had not been the situation, the above statement would have been unnecessary if we consider the nature of the crime punishable by Act No. 220."

We cannot agree either in that *People* v. *Cardona,* 57 P.R.R. 682 (1940), which construed the aforementioned Act on the matter—Act No. 25 of July 17, 1935 (Sp. Sess. Laws, p. 152)—has the scope attributed to it. We said therein that the statute punishes not the buyer but the seller of a bolipool ticket and that, therefore, the admission of the fact that he had purchased a ticket did not convert the witness into an accomplice whose testimony *requires corroboration.* In the present case we do not have the problem of corroboration. *Cf. People* v. *Adorno,* 81 P.R.R. 504, 530–531 (1959); *People* v. *Portalatín,* 72 P.R.R. 145, 154 (1951). As we have said, Rodríguez could not be charged with the violation of § 4

because he was not caught carrying, transporting, or having in his possession bolita material,[3] nor did his action constitute the encouragement referred to in § 36 of the Penal Code, 33 L.P.R.A. § 82.

The judgment rendered against appellant Ismael Torres Avilés will be affirmed and the conviction of Santos Rodríguez Capeles will be reversed.

---

[3] Probably it is a coincidence, but it does have some significance that although both appellants were included in the same information, the facts which charged the commission of the crime were stated in singular and not in plural.