*324 E. GRADY JOLLY, Circuit Judge,
joined by EDITH H. JONES, JERRY E. SMITH, BARKSDALE and DeMOSS, Circuit Judges, dissenting:
Because I find that § 1958 requires that the use of the facility be in interstate or foreign commerce, I respectfully dissent.
I
In 1993,[1] the time of these offenses, the relevant part of § 1958 read:
(a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, shall be fined not more than $10,000 or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined not more than $20,000 and imprisoned for not more than twenty years, or both; and if death results, shall be subject to imprisonment for any term of years or for life, or shall be fined not more than $50,000, or both.
(b) As used in this section and section 1959 . . .
(2) “facility of interstate commerce ” includes means of transportation and communication.
Thus, the issue before us is simply stated: what does the phrase “uses or causes another to use the mail or any facility in interstate or foreign commerce” mean? Does it mean that the particular use must be in interstate or foreign commerce at the time of the offense, or does it mean that the facility must be one generally engaged in interstate or foreign commerce? The former is the proper way to read the statute.
A
In our original panel opinion in Cisne-ros, we began by noting a difference between § 1958(a) and § 1958(b). Part (a) refers to facilities “in interstate or foreign commerce,” while (b) mentions facilities “of interstate commerce.” At that time, we were not sure how to treat part (b). It appeared to be purely definitional, but it purported to define a term, “facility of interstate commerce,” that was not present in (a). In truth, “of interstate commerce” means something very different from “in interstate commerce.” Thus, we concluded that (b) was in conflict with (a), and proceeded with our analysis to resolve that conflict.[2]
We all now appear to agree, however, that (b) is not definitional in the sense that the Cisneros panel construed it. Instead, (b) merely provides examples of what might constitute a “facility” for purposes of the statute — means of transportation and communication. Read in this way, (b) does not conflict with (a), as it does not define a term not present in (a).
B
We will therefore focus on part (a) and ask what “use a facility in interstate or foreign commerce” means. The threshold question is whether the phrase “in interstate or foreign commerce” describes the *325 word “use” or the word “facility.” If the phrase modifies use, then the statute clearly requires that the particular use be “in interstate or foreign commerce.” We believe this is the proper construction.
The majority first contends that because “in interstate or foreign commerce” falls next to “facility,” that is the term the phrase modifies. But consider how the statute would have read if the drafters did intend the meaning we propose and had followed the majority’s “rule of proximity”: “whoever causes another to use, in interstate or foreign commerce, the mail or any facility.” This arrangement of words is an awkward grammatical construction that Congress was unlikely to accept. This is true, not only because the construction is awkward, but because it would require the use of the United States mail to be in interstate or foreign commerce before federal jurisdiction would attach.[3] Thus, the rule of proximity does not appear helpful here.
The majority also considers § 1958’s title, “Use of interstate commerce facilities in the commission of murder-for-hire.” According to the majority, this suggests that the “in interstate or foreign commerce” clause modifies “facilities.” But this title is cursory and intended only as a quick, general description. The title is so inconsistent with the statute that it omits any reference to “foreign facilities.” Does that mean that use of facilities in foreign commerce really does not qualify under the statute? No, of course not. The title of a statute is of little help when ascertaining the statute’s meaning requires untangling subtleties.
Instead, we return to the phrase in question: “Whoever travels in interstate or foreign commerce, or uses the mail or any facility in interstate or foreign commerce.” Because the phrase “in interstate or foreign commerce” is used more than once, it is appropriate to look at the other uses of the term and to interpret them in a consistent manner. In the first part of the statute (“[wjhoever travels in ... interstate or foreign commerce”), the phrase “in interstate or foreign commerce” is used as an adverbial clause that modifies the verb “travels.” The “in” clause tells us where the travel occurred. The second use of the phrase reads: “or uses or causes another to use ... any facility in interstate or foreign commerce.” If the “in” clause is used in a consistent manner in the statute, this second use is an adverbial clause as well, telling us where that use must occur, that is, “in interstate or foreign commerce.”
Thus, relating “in interstate or foreign commerce” to “use” appears to be the proper way to read the statute. But even if one does not agree with this reasoning, one must concede that, at a minimum, the statute is ambiguous as to which words “in interstate or foreign commerce” modifies.
If we then turn to the alternative, that the “in interstate or foreign commerce” clause modifies “facility,” it creates greater ambiguity. There are two possible interpretations of that grammatical construction: either any facility that is generally engaged “in” interstate or foreign commerce will qualify, or the facility must be “in” interstate or foreign commerce at the moment of the offense. If, however, .we chose the first, we would be interpreting “in interstate or foreign commerce” as though Congress had said “of interstate or foreign commerce.” Any facility that is generally engaged “in interstate or foreign commerce” is, by definition, a facility “of interstate or foreign commerce.” But the phrase “facility of interstate or foreign commerce” evokes something different from “facility in interstate or foreign commerce.” [4] This very significant distinction *326 weighs against the first interpretation and suggests instead that the facility should be in interstate or foreign commerce at the time of the offense. At the very minimum, there is ambiguity in the statute.
If one concedes the statute’s ambiguity, the next place to turn is the canons of construction. One is particularly apt: when facing a statute that could potentially alter the delicate balance between the state and federal government, especially in the area of criminal law, we require an unmistakably clear statement by Congress that this was its intent. Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S.Ct. 2895, 2401, 115 L.Ed.2d 410 (1991); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); Rewis v. United States, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971). The construction the majority proposes would alter this balance significantly. The majority’s interpretation would make virtually every murder-for-hire a federal crime, because any use of a telephone or an automobile would qualify.[5] It is difficult to imagine a murder-for-hire scheme that would not involve the use of a phone or a car at some point. But nothing in the language of the statute suggests that Congress intended to make all such crimes a matter of federal concern. Thus, this canon weighs heavily against the majority’s interpretation.
Moving on from parsing the language and construction of the statute, the majority also refers to United States v. Heacock, 31 F.3d 249, 254-55 (5th Cir.1994) for support of its position. In that case, we construed § 1958’s companion statute, the Travel Act, to encompass purely intrastate use of the mails. And, as the majority notes, we have previously used jurisprudence interpreting the Travel Act as a guide in construing § 1958.
Heacock is not, however, helpful in the inquiry before us. First, the language in the Travel Act at the time was different from that before us in § 1958: “whoever ... uses any facility in interstate or foreign commerce, including the mail.” Any conclusions about the meaning of those words are of questionable value in construing the meaning of a different set and arrangement of words. Second, we based our Heacock decision on the reasoning applied in United States v. Riccardelli, 794 F.2d 829, 831-33 (2d Cir.1986). In that *327 case, the court concluded that the mails were a special case, separate and distinct from “facilities in interstate or foreign commerce.” The historical and constitutional pedigree of the postal service indicates that this entity is inherently federal in nature, and that Congress has special concern in regulating its use. Thus, any use of the mail qualified under the statute. But Heacock does not, therefore, extend to any intrastate use of other facilities for purposes of § 1958.
Neither is the legislative history supportive of the majority’s reading of the statute. Although the majority points to passages from a report by the Senate Judiciary Committee for the proposition that Congress intended to extend federal authority under § 1958 to almost all murders-for-hire, limited only by the prosecutor’s discretion, it omits passages clearly supportive of a congressional intent to limit jurisdiction to cases in which a facility is in interstate or foreign commerce at the time of the offense. For instance, the report’s example of a situation in which the federal nexus is present plainly contemplates the use of a facility in interstate commerce: “Thus, an interstate telephone call is sufficient to trigger federal jurisdiction.” S.Rep. No. 225, 98th Cong., 1st Sess.1983, 1984 U.S.C.C.A.N. 3182, 3485. The report does not assert that any use of a telephone is sufficient. Instead, it suggests that the actual use must be in interstate or foreign commerce. Similarly, in describing the prosecutorial discretion involved, the report notes that “the committee fully appreciates that many state and local police forces and prosecutors offices are quite capable of handling a murder for hire case notwithstanding the presence of some interstate aspects ...” Id. at 3484. This passage suggests that Congress envisioned that all of the cases falling under the statute would have some “interstate aspects,” and not just local use of the facilities of interstate commerce. Admittedly, the report does use both the language “facility of interstate commerce” and “facility in interstate commerce.” This alternative use in a legislative report cannot conclusively establish Congress’ intent in drafting the statute. Ultimately, as is often the case, the legislative history is inconclusive, and thus unreliable.
All of the ambiguity we have outlined in this dissent leads us to the same conclusion reached in the original Cisneros opinion — that the rule of lenity is applicable to this case. The rule applies when, after “seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended.” United States v. Wells, 519 U.S. 482, 499, 117 S.Ct. 921, 931, 137 L.Ed.2d 107 (1997)(quoting Smith v. United States, 508 U.S. 223, 239, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993), and Ladner v. United States, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958)). We believe this is the situation here.
The rule of lenity counsels us to resolve ambiguity in criminal statutes by construing such statutes narrowly. This rule is rooted in the due process requirement that Congress clearly articulate what conduct it has made criminal:
“(W)hen choice has to be made between two readings of what conduct has made Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication.” ... This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.
Ladner v. United States, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958) (quoting United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221-22, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952)). In orn-ease, the rule weighs in favor of requiring *328 that the use of the facility be in interstate or foreign commerce.
The majority has reached a different conclusion. In doing so, they split from the Sixth Circuit. United States v. Weathers, 169 F.3d 336, 342 (6th Cir.1999). I respectfully dissent.

. In 1994, the statute was amended to allow for capital punishment when death resulted from a murder-for-hire. Pub.L.No. 103-322, § 60003(a)(l 1), 108 Slat.1969, 2033 (1994).

. We ended up ignoring (b) altogether. We acknowledged that the canon against superfluousness counselled against doing this. But this canon cut both ways, because replacing “in” in (a) with "of” would have rendered the part of (a) related to travel superfluous. Interstate travel would always require use of a facility of interstate commerce. At least by ignoring (b) rather than part of (a), however, we were giving precedence to the operational, as opposed to the definitional, part of the statute. See United States v. Weathers, 169 F.3d 336, 342 (6th Cir.1999).

. This would be a different conclusion from the one we reached in United. States v. Heacock, 31 F.3d 249, 254-55 (5th Cir.1994), with respect to the Travel Act, § 1952.

. If the dictionary definitions of the two words is not enough, consider the Supreme Court's discussion of Congress’ interstate commerce powers under United States v. Lo *326 pez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The Court clearly differentiated between “in interstate commerce” and “of interstate commerce”: “the instrumentalities of interstate commerce, or persons or things in interstate commerce.”

. This expansion of federal power stems from the majority's broad interpretation of "in interstate or foreign commerce” to be synonymous with the phrase "of interstate or foreign commerce.” Because § 1958(b)(2) specifies that "means of transportation and communication” are facilities of interstate commerce for purposes of the statute, any use of a telephone or automobile would be sufficient to invoke the statute. Moreover, courts typically treat the similar term "instrumentality of interstate commerce” as encompassing "means of transportation and communication” like cars and telephones. See United States v. Gilbert, 181 F.3d 152, 1999 WL 397424 at *6 (1st Cir.l999)(holding that a telephone is an instrumentality of interstate commerce, regardless of whether it is used in an interstate manner); United States v. Weathers, 169 F.3d 336, 341 (6th Cir.1999)(intrastate telephone calls qualify as use of instrumentality of interstate commerce); United States v. Cobb, 144 F.3d 319, 322 (4th Cir.1998)(automobiles qualify as instrumentalities of interstate commerce); United States v. Randolph, 93 F.3d 656, 660 (9th Cir.1996)("[C]ars are themselves instrumentalities of interstate commerce.”); United States v. Bishop, 66 F.3d 569, 588 (3d Cir.1995)(motor vehicles are in-strumentalities of interstate commerce); Dupuy v. Dupuy, 511 F.2d 641, 644 (5th Cir.1975)(hoIding that intrastate use of phones qualifies as use of an instrumentality of interstate commerce).
Of course, these cases all refer to "instru-mentalities,” not "facilities.” As we explained in our original Cisneros opinion, however, the important distinction is between the use of "of” and "in,” not between "instrumentality” and "facility.” Cisneros, 194 F.3d at 632, n. 4.