**UNITED STATES of America**

v.

**Peter OTTLEY, Defendant.**

**No. 77 Cr. 563.**

United States District Court,
S. D. New York.

Oct. 19, 1977.

As Amended Oct. 31, 1977.

Robert B. Fiske, Jr., U. S. Atty., New York City, for plaintiff; by Joel N. Rosenthal, Asst. U. S. Atty., New York City, of counsel.

William I. Aronwald, New York City, for defendant.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Peter Ottley, President of Local 144 of the Hotel, Hospital, Nursing Home and Allied Employees Union, moves to dismiss a two-count indictment charging him with failure to maintain records of the Local's financial condition as required by the Land-

rum-Griffin Act, 29 U.S.C. § 436. Such records are designed to provide a check on the accuracy and completeness of financial reports that every labor organization must file annually under § 431(b) of the Act. The first count charges a failure to keep records from August 1 to December 31, 1972; the second deals with the same offense for the period of January 1, until August 31, 1973.

Ottley had previously been indicted. On August 29, 1973 the government had filed a 46 count indictment charging him and two others with violations of the Landrum-Griffin Act and embezzlement from an employees' benefit fund. One of these counts charged Ottley with failure to keep records, the same offense alleged in the instant indictment, for the period of August 1, 1968 through July 31, 1972. After a trial before Judge Marvin E. Frankel the jury acquitted Ottley on twenty of the twenty-three counts submitted to it and convicted him on the other three, including the record-keeping charge. That conviction was reversed by the Court of Appeals (509 F.2d 667), for reasons having nothing to do with the sufficiency of evidence. That court's mandate was received by the District Court on January 21, 1975. On November 1, 1976, the government filed a *nolle prosequi* and the court dismissed the 1973 indictment. The indictment in the instant case was filed on July 29, 1977.

In his motion to dismiss, Ottley claims that the present indictment infringes his freedom of speech, constitutes an impermissible "selective prosecution," was filed in violation of representations made to him, infringes his right to a speedy trial and places him twice in jeopardy for the same offense. The issues were thoroughly ventilated upon oral argument. We reject all but two of Ottley's claims on the grounds then stated on the record. However, for reasons which follow, we dismiss the first count on grounds of double jeopardy and

the second in the exercise of our supervisory power over the administration of criminal justice.

## DISCUSSION

### (a) The relevant facts

The original indictment, returned on August 29, 1973, contained 46 counts including the one pursuant to § 436 charging the failure to keep records for the period beginning on August 1, 1968 and ending July 31, 1972. At the time the indictment was returned there was no thought in any one's mind that the defendant had in any way changed his methods of operation after July 31, 1972 or that, to the extent that his conduct had been criminal up to that date, it did not so continue until the date of the indictment. Nor was there any question of the government's ability—by the simple service of subpoenas calling for the production of records known to be available—to establish such continued wrongdoing to the satisfaction of the grand jury. In brief, the July 31 cutoff date was selected for the government's administrative convenience.

When, on January 21, 1975 the mandate of reversal was received by the District Court three charges, including the one for failure to keep records, remained open for trial. Under the then applicable rule (Rule 6) those charges, in the absence of stipulation by the defendant, were required to be tried within 90 days or—at the very latest—by April 21, 1975.[1] The defendant for reasons of his own convenience stipulated, on March 28, 1975, that this time could be extended until the "early fall" of that year. However the government did not move the case for retrial either within the time limit established by the Rule or within such limit as extended by defendant's stipulation. Instead on November 1, 1976, it filed a *nolle prosequi* pursuant to which the indictment was dismissed.

---

1. Rule 6 of the Prompt Disposition Rules, which placed a 90-day limit on the period in which retrials must be had, became effective April 1, 1973 and was still applicable when the mandate issued here. It has since been re-

placed by Rule 5(b), effective July 1, 1976, which shortened the relevant period to 60 days, with the possibility of an extension by the court to 180 days.

The government's avowed and actual reason for proceeding in this manner was to enable it to conduct further investigations in the hope of uncovering evidence of additional criminal conduct which would justify the making of additional charges and thus create a more attractive case from the prosecution's point of view. Apparently failing in this endeavor, the government on July 29, 1977 filed the instant indictment based—as we have observed—on evidence which had at all times been readily available to it.

### (b) Claimed violation of the constitutional prohibition against double jeopardy

The Supreme Court has recently reminded us that the "Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the single expedient of dividing a single crime into a series of temporal . . . units." *Brown v. Ohio* (1977) 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187. The question before us is whether the government has done just that, i. e. whether this defendant, whose first indictment for failure to keep records until July 31, 1972 was dismissed, is now being prosecuted again for the same crime in this indictment, which charges a failure to keep records from August 1 through December 31, 1972 (Count 1) and from January 7 until August 31, 1973 (Count 2).

The proper approach to this problem is found in *United States v. Universal Corp.* (1952) 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260. In that case the Court had before it the question whether the Fair Labor Standards Act, which among other things prohibited the payment of substandard wages, penalized a course of conduct or enabled a prosecutor to treat as a separate offense each breach of the statutory duty owed to a single employee during any work week. In rejecting the government's contention that the latter view should be adopted, the Court, speaking through Mr. Justice Frankfurter, recognized that the answer could not be found in the words of the statute. Instead, the Court based upon legislative history its conclusion that the defendant's course of conduct rather than its individual acts constituted the unit of crime. Here, we do not have to resort to legislative history, for sufficient guidance is found in the statute itself.

The Landrum-Griffin Act requires all labor organizations to file annual reports detailing their financial operations and conditions for the preceding fiscal year, 29 U.S.C. § 431(b). The Act also mandates that persons subject to the annual reporting requirement maintain records "from which the documents to be filed . . . may be verified, explained or clarified, and checked for accuracy and completeness," 29 U.S.C. § 436. While the duty to report is annual, the duty to keep records is ongoing. However it seems to us that the two duties are clearly related, and that the "unit of prosecution" for the ongoing obligation to keep records should be the fiscal year to which they relate.[2] Since the Union's fiscal year in the instant case runs from January 1 to December 31, it follows that the earlier indictment, charging failure to keep records through July 31, 1972, placed Ottley in jeopardy for his record-keeping practices in the 1972 fiscal year. The first count of the indictment, charging a failure to keep records from August 1 through December 31, 1972 therefore places him in jeopardy a second time for the same offense. Accordingly, that count is dismissed.[3] Ottley has not however previously been placed in jeop-

---

**2.** It is axiomatic that any ambiguities as to the appropriate unit of prosecution should be resolved in favor of lenity for the accused. *Bell v. United States* (1955) 349 U.S. 81, 83–84, 75 S.Ct. 620, 99 L.Ed. 905, *United States v. Jones* (6th Cir. 1976) 533 F.2d 1387, 1390–92.

**3.** The result would be different if the indictment had been returned before the relevant unit of prosecution was completed. In such a situation a defendant should not be given immunity for criminal conduct committed after the indictment had been filed. *United States v. Moss* (2d Cir. 1977) 562 F.2d 155 at 160. See also *United States v. Jones, supra,* 533 F.2d at 1391.

ardy for the January 1 to August 31, 1973 period covered by the second count. As to that count, the motion to dismiss on double jeopardy grounds is denied.

(b) Claimed violation of constitutional and statutory prohibitions against undue delay

Noting that the delay claimed to be excessive occurred prior to the filing of the instant indictment, the government persuasively urges that no Fifth or Sixth Amendment question is presented by such delay. *United States v. Marion* (1971) 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; *United States v. Lovasco* (1977) 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752. It further urges that the speedy trial act and the various court rules dealing with the prompt disposition of cases concern themselves almost exclusively with post indictment—rather than pre-indictment—delay. 18 U.S.C. § 3161 et seq.; Southern District's Plan for Achieving Prompt Disposition of Criminal Cases. Defendant, on the other hand, presents several imaginative arguments by which, he contends, these conclusions can be avoided. We need not resolve this controversy because we find that the case before us should be dealt with pursuant to our supervisory power over the exercise of prosecutorial discretion in this district.

(c) The exercise of prosecutorial discretion

■ In reviewing the exercise of prosecutorial discretion we are of course, concerned with the values underlying both the constitutional prohibition of double jeopardy and the constitutional and statutory prohibitions of undue delay. Our actions, however, have far broader scope than if we were confined to statutory or constitutional interpretation. *McNabb v. United States* (1943) 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819; *United States v. Furey* (2d Cir. 1975) 514 F.2d 1098, 1103.

We find clear guidance for review of prosecutorial discretion in the Supreme Court's opinion in *United States v. Lovasco, supra.* Although the Court had not there been called upon to review the exercise of prosecutorial discretion, its in effect unanimous[4] opinion by Mr. Justice Marshall, in explaining why such discretion should not be circumscribed by considerations of due process, gave clear indications as to how it should be exercised.

Mr. Justice Marshall divided the consequences of any arbitrary restraint on prosecutorial discretion into two categories: potential harm to the prosecution, and potential harm to the defense. In the former category he noted that forcing a prosecutor prematurely to file an indictment might impair his ability ultimately to obtain a conviction because untimely arrest and indictment might cause "potentially fruitful sources of information to evaporate before they are fully exploited" and thus prevent the prosecution from obtaining pertinent evidence against the defendant himself or against his accomplices (431 U.S. p. 791, 97 S.Ct. p. 2050). Turning to the second category—potential harm to the defendant—the Justice set forth a whole panoply of considerations. Forcing a premature indictment might result in "unwarranted charges being filed" and, by requiring its filing at a time when further investigation remained to be done, might "add to the time during which defendants stand accused but untried." This, among other things, might interfere with a defendant's liberty, disrupt his employment and subject him to public obloquy (p. 792, 97 S.Ct. p. 2050). Premature indictment might also injure the defendant by preventing the prosecution from uncovering all the crimes of which he might be guilty, thus subjecting him to "multiple trials growing out of the same transaction or occurrence" (p. 792, n. 12, 97 S.Ct. p. 2050). Finally, premature indictment might prevent the prosecution from uncovering exculpatory evidence "cru-

---

4. Mr. Justice Stevens, the sole dissenter, doubted whether the particular facts before the Court presented the questions Mr. Justice Mar- shall was discussing, but otherwise specifically endorsed his opinion.

cial in assessing . . . culpability, as distinguished from . . . legal guilt" which could possibly lead the prosecution to withhold indictment.

It is at once apparent that, insofar as any or all of those considerations were applicable to the case at bar, they were resolved by the government against delay on August 29, 1973 when the first indictment was filed; and that none of them were relevant on January 21, 1975 when the mandate of reversal was received by this court. It would unduly lengthen this opinion to recite the various parallels which make the situation before us a mirror image of the one projected by Mr. Justice Marshall. Suffice it to say that the government could have suffered no injury by the inclusion of these counts in the earlier indictment,[5] that in the months following the return of the mandate it uncovered no evidence not readily available to it on the day the original indictment was filed,[6] and that it has shown no permissible justification for the intervening delay.[7] In short, we find that there has been an abuse of prosecutorial discretion which this court should not condone.

(d) Summary

In summary, we dismiss count one of this indictment on grounds of double jeopardy and count two in the exercise of our supervisory power.

SO ORDERED.

---

**5.** No avenues of inquiry that survived the first indictment could have been shut off if these offenses had been included in it.

**6.** We need not consider what would have been the result had the government succeeded in its efforts to uncover evidence of other criminal activity. It might then have been able to argue that the delay had avoided "multiple trials." However, even in such circumstances, it would seem highly improbable that any

additional established crimes would have arisen out of the "same transactions" as any of those involved in the prior indictment. Cf. *Lovasco*, at 792 n. 12, 97 S.Ct. 2044.

**7.** We regard it as *de minimis* and therefore irrelevant that the period covered by the second count extends two days beyond the filing of the first indictment.