**UNITED STATES of America**

v.

**Eddy J. CARRASCO, et al., Defendants.**

**No. S1 97 CR 89(SAS).**

United States District Court,
S.D. New York.

July 7, 1997.

Patrick Smith, Mylan Denerstein, Assistant United States Attorneys, New York City, for the Government.

Scott H. Greenfield, New York City, for Defendant.

**OPINION AND ORDER**

SCHEINDLIN, District Judge.

**I.  Introduction**

Defendant Eddy J. Carrasco ("Carrasco") moves for dismissal or for severance. For the reasons set forth below, the motion to dismiss is denied but the motion to sever is granted.

**II.  Factual Background**

On February 6, 1997, a grand jury sitting in this district returned Indictment 97 Cr. 89(SAS), charging 12 defendants with conspiring to distribute heroin. The indictment was sealed the same day it was returned. On February 11, 1997, a grand jury sitting in this district returned Indictment 97 Cr. 103(MBM), which charged Eddy J. Carrasco, then known as "Raymond Carrasco", with conspiring to distribute heroin. That indictment was also sealed the day it was returned. Both indictments were unsealed on February 13, 1997, following the arrest of Carrasco and eleven of the twelve defendants named in 97 Cr. 89.[1]

On February 20, 1997, both cases were randomly assigned to two different judges. On February 24, 1997, the parties in 97 Cr. 103 appeared before Judge Mukasey. At that appearance, the Government informed

the Court that it intended to seek a superseding indictment the next day to add defendant Carrasco to 97 Cr. 89. The Government conceded that both indictments charged the same conspiracy. On February 25, 1997, the grand jury returned the superseding indictment, adding Carrasco as a defendant in 97 Cr. 89 and extending the charged conspiracy to and including February 13, 1997. Finally, on March 31, 1997, Judge Mukasey ordered a *nolle prosequi* of Indictment 97 Cr. 103. As a result, defendant no longer faces a risk of multiple punishments for the same offense.

**III.  The Motion to Dismiss**

Defendant filed his motion to dismiss on March 19, 1997, on the ground that defendant was twice indicted for the same offense, in violation of the Fifth Amendment to the United States Constitution. By the time the Government responded on April 4, 1997, it had moved to dismiss one of the two indictments, which was so ordered on March 31, 1997. Nonetheless, defendant still maintains that the pending indictment is "multiplicitous".[2]

Multiplicity occurs when a single crime is separated into two or more indictments. Multiplicitous indictments are prohibited by the double jeopardy clause of the Constitution, which prohibits multiple punishments for the same offense. *See generally, United States v. Maldonado–Rivera*, 922 F.2d 934, 969 (2d Cir.1990); *United States v. Nakashian*, 820 F.2d 549 (2d Cir.1987). The gist of defendant's argument is that after he was indicted on February 11, 1997, there was no basis for indicting him again on the same charges on February 25, 1997. While the Government refers to the second indictment as "superseding", Carrasco challenges this term, noting that he was not named in the original indictment.[3] Indeed, other than

---

1. This version of the facts, which is not disputed by defendant Carrasco, is taken from the Government's letter of April 4, 1997, in opposition to the motion to dismiss or sever ("Govt.Let.").

2. *See* Reply Affidavit of Scott H. Greenfield, attorney for Eddy J. Carrasco, dated April 11, 1997 at ¶ 7 ("Greenfield Aff.").

3. Interestingly, defendant contends that at the arraignment on the superseding indictment, held on March 6, 1997 before Magistrate Judge Buchwald, the Government asserted that this was not a superseding indictment, but a new indictment. Counsel also notes that at a status conference held on March 7, 1997, before this Court, the government again asserted that this was a

adding Carrasco as a defendant, the only change in the original indictment was a three-day extension of the termination date of the charged conspiracy from February 10 to February 13.

Defendant concedes that under the usual circumstances, "multiplicitous counts of an indictment require the government to select the count upon which to proceed." Greenfield Aff. at ¶ 14. However, defendant argues that because the Government created the problem by intentionally filing a multiplicitous indictment, dismissal of one of the indictments is not a cure. Defendant believes that there was some "sinister" motive in not originally indicting him together with the 12 defendants named in the multiple-defendant indictment. Although defendant declines to specify what the Government's improper motive may have been,[4] he argues that whatever the motive the Government's action involved an abuse of the grand jury which should be sanctioned by this Court. The sanction urged by defendant is dismissal of the pending Indictment.

The defendant relies on a single case in support of his motion. Carrasco cites *United States v. Ottley*, 439 F.Supp. 587 (S.D.N.Y. 1977), for the proposition that the Government abused its prosecutorial discretion by twice-indicting the defendant for the same crime. The defendant also argues that he was unable to find any case discussing or sanctioning the procedure employed here by the Government. In its response, the Government cites no case approving of its procedure. Rather, it argues that it always intended to supersede the first indictment by adding defendant Carrasco, without explaining why it did not do so in the first instance. *See* Govt. Let. at 4.

Because defendant places heavy reliance on the *Ottley* case, the facts of that case are instructive. Ottley was originally indicted in

August, 1973. At the trial, he was acquitted of 20 counts and convicted of three counts, including a count of failing to keep records during a part of 1972 as required by the Landrum–Griffin Act. His conviction was reversed on appeal. The mandate issued on January 21, 1975. On November 1, 1976, the government filed a *nolle prosequi* and the court dismissed the 1973 indictment. Ottley was then indicted again in 1977 in a two count indictment, the first of which charged him again with failing to file the required reports in 1972. The trial judge noted that the second indictment was based on the identical information available to the government at the time of the first indictment. The court held that because the second indictment placed the defendant in jeopardy a second time for the same offense, that count of the indictment should be dismissed. In that case, however, the defendant had stood trial on the charge four years prior to the second indictment. In addition, the second indictment was returned two years after the Court of Appeals reversed the conviction. At that time, the Rules of this Court required that a retrial occur within 90 days of the issuance of the mandate. *Id.* at 589 n. 1. The indictment was not dismissed until more than a year after that deadline expired, and the new indictment was not returned until a year and a half after the deadline expired. Under those circumstances, dismissal was the only appropriate remedy.

The facts and procedural history of this case have little in common with those in *Ottley*. While it is true that the Government had the same information in its possession at the time it indicted Carrasco for the second time, nothing had occurred in the first case other than the selection of the judge. No motions were made, no hearings or trial was held, and no deadlines were missed. In

---

new indictment and did not supersede the indictment before Judge Mukasey. Defendant's Memorandum of Law ("Def.Mem.") at 5–6.

4. In his moving papers, as opposed to the Reply Affidavit, defendant posits that the improper motive was to engage in judge-shopping. Counsel argues that it was not until the Government knew which judges were drawn from the wheel that it decided to dismiss one Indictment and

add Carrasco to the other. "[T]he government deliberately ignor[ed] the double jeopardy clause and ... the Rules ... to achieve the purpose of hand-picking a forum for the prosecution of Eddy J. Carrasco after learning that [sic] of the forum randomly obtained via the wheel at arraignment.... [The government's] avowed purpose was to remove his prosecution from Judge Mukasey...." Def. Mem. at 7–8.

short, the defendant has not been prejudiced by the return of the second indictment. As noted earlier, he does not now face multiple punishments for the same offense. The harm, if any, is that he is facing trial and possible sentence before a different judge than was originally and randomly selected and he is now joined in a single indictment with twelve co-defendants.

Under these circumstances, dismissal of the pending indictment would be an inappropriate remedy. The double jeopardy problem has been cured. The only remaining issue is whether the claimed prejudice or harm can or should be cured.

## IV. The Motion to Sever

■ Defendant argues that his case should be severed from that of his recently-joined co-defendants for five reasons. The first, which is not explicitly stated, but which is argued throughout the motion, is that such a severance would be an appropriate remedy for the Government's conduct in twice-indicting him for the same crime, thereby knowingly bringing a multiplicitous indictment. The other four reasons, set forth at Point III of Defendant's Memorandum of Law and again at ¶¶ 25–46 of the Greenfield Reply Affidavit, include the following: Speedy Trial concerns, antagonistic defenses, evidentiary problems and spillover prejudice. Based on the totality of the circumstances, a severance is warranted.

The Government acknowledges that a motion to sever is "committed to the sound discretion of the trial court." Govt. Let. at 4 (citing *United States v. Torres,* 901 F.2d 205, 230 (2d Cir.1990); *United States v. Casamento,* 887 F.2d 1141, 1149 (2d Cir.1989)). The Government goes on to note that generally, when defendants are jointly indicted they should be jointly tried. *Id.* Of course, as defendant strenuously argues, Carrasco was not originally indicted with his current co-defendants.

A. The Superseding Multiplicitous Indictment

The Government's conduct in indicting defendant separately and then re-indicting him for the same conduct in a separate indictment does not emit a pleasant odor. While there may be no discernable improper motive for this conduct, it is not hard to imagine a case where such would create real forum-shopping problems. As defendant argues, the logical extension of this conduct is that the Government

> could theoretically continue to indict this or any defendant, have him or her arraigned anew and await assignment to the Judge of its choice. Even worse, the government could simultaneously prosecute each of the indictments, each with its onerous burden on the defense, and ultimately go to trial with the Judge who issues the most favorable rulings.

Def. Mem. at 9. *See also,* Greenfield Aff. at ¶¶ 17–21 ("the next logical step is for the government to re-indicted [sic] already indicted defendants at their leisure, and thereby eliminate the host of problems that could arise during the course of a prosecution.").

I share defendant's concerns. To this Court's knowledge, the Government was aware of all the evidence against Carrasco when it chose to indict him separately from those defendants named in the original multiple-defendant indictment.[5] Nothing changed between February 11, the date of the first Carrasco indictment and February 25, the date of the second Carrasco indictment, except the selection of the trial judges on both cases.[6] It is not appropriate for the Government to use the grand jury as a tool for making strategic decisions at the expense of defendant's rights, as more fully discussed below.

B. The Remaining Grounds for Severance

Viewed in the light cast by the Government's strange conduct, the Speedy Trial

---

5. The Government may have legitimate reasons for proceeding in such a fashion, but having failed to share them with the Court, it cannot now be heard to argue that no adverse inference as to its motives should be drawn against it.

6. It would also be appropriate to use the February 24 date on which the Government informed Judge Mukasey that it intended to seek a superseding indictment adding Carrasco to the Hernandez case assigned to this Court.

argument is more compelling than it might otherwise appear. Defendant represents that at his original arraignment before Judge Mukasey he requested an immediate trial, agreeing to waive all motions. Greenfield Aff. at ¶ 25. Now, joined with 12 co-defendants, he will be forced to await a trial date to be scheduled at the close of all motion practice. As defendant notes, he has not been the subject of any wire-taps, searches or post-arrest statements. His co-defendants have made or will make motions with respect to all of these. Defendant, who is detained pending trial, will be held for a lengthy period of time, which would not otherwise be the case if he were separately tried.[7] Under the unusual circumstances presented here, defendant's right to a speedy trial will be prejudiced absent a severance.

■ While the existence of antagonistic defenses is not generally a ground for a severance, *see Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) and *United States v. Harwood*, 998 F.2d 91 (2d Cir.1993), defendant now represents that co-defendant Hernandez "will testify for the defendant if there is a severance." Greenfield Aff. at ¶ 34. While Carrasco concedes that he has no iron-clad guarantee that Hernandez will actually do this, and neither Hernandez or his attorney has submitted an affidavit to this effect, Carrasco's claim may be distinguished from those discussed in the cases cited by the Government. In *Harwood*, each defendant would point the finger at the other—the typical scenario of antagonistic defenses. By contrast, Carrasco proffers a very different scenario—that a co-defendant will exculpate him. If this were the only basis for the requested severance, I would not be inclined to grant it. However, it adds some weight to defendant's request

when combined with all of the other circumstances.

Defendant also claims that the Government will introduce Hernandez' statement that his "actions in narcotics trafficking were somehow connected, either at the behest of, or with the blessing of, Eddy Carrasco." Def. Mem. at 13. Defendant argues that this statement would not be admissible against him at a separate trial, because the Government has no non-hearsay evidence that shows that Carrasco participated in the charged conspiracy. Rather than disclose any such evidence, the Government responds that it "will offer other, non-hearsay evidence, that shows that Carrasco participated in the charged conspiracy." Govt. Let. at 6. No such evidence has been proffered. I am left to conclude that the statement would be admitted at a joint trial to the possible unfair prejudice of defendant Carrasco.

Finally, Carrasco argues that he will suffer from the effect of prejudicial spillover given the mountain of evidence against his co-defendants, based on wire-taps, searches and post-arrest statements, and the paucity of evidence against him. As with the argument on antagonistic defenses, I again conclude that in combination with all the other factors discussed above this ground adds weight to the defendant's motion. As this Court has previously held, "[t]he defendant requesting a severance must show substantial prejudice resulting from joinder, not just that he would have a better chance for acquittal at a separate trial." *United States v. Alegria*, 761 F.Supp. 308, 312 (S.D.N.Y.1991). For the reasons previously articulated, this defendant has established substantial prejudice resulting from joinder. Accordingly, the motion to sever is granted.

---

7. Defendant has consented to detention because he would otherwise be remanded to state custody. At the time of his arrest he had completed the custodial portion of a state sentence and was participating in a work release program. When he was arrested on the federal charges, he was deemed to have absconded and a warrant was issued for his arrest. His attorney was informed that the warrant could not be satisfied unless he was returned to state custody. Although the defendant requested that the warrant be satis-

fied, the Government declined to do so, commenting that it would do so after service of his federal sentence. If he was returned, work release would be revoked (because he "absconded" as a result of the arrest), and he would be held in a state prison pending his federal trial. Because there is an outstanding warrant, he is not being credited with time spent in federal custody. He will only receive such credit if he is convicted on the federal charges. *See* Def. Mem. at 4–5, 11–13; Greenfield Aff. at ¶¶ 31–33.

## V. Conclusion

For the reasons set forth in this Order, the motion to dismiss is denied but the motion to sever is granted. A pre-trial conference is scheduled for 10.00 A.M. on Wednesday, July 9, 1997.

SO ORDERED.