Thelmiah LEE, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 09–CT–918.

District of Columbia Court of Appeals.

Argued May 10, 2011.
Decided May 26, 2011.

William P. Farley, Washington, DC, appointed by the court, for appellant.

John J. Woykovsky, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.

Before FISHER, Associate Judge, REID,* Associate Judge, Retired, and NEBEKER, Senior Judge.

REID, Associate Judge, Retired:

This case involves a traffic incident during which appellant, Thelmiah Lee, rear-ended a vehicle (causing property damage and personal injury) and fled from the scene of the accident without providing his name and other identifying information. A jury convicted him of two charges under § 10(a) of the District of Columbia Traffic Act of 1925 ("the Traffic Act"), D.C.Code § 50–2201.05(a)(1) (2009 Repl.): leaving after colliding—property damage ("LAC–PD") and leaving after colliding—personal injury ("LAC–PI").[1] He claims that (1) multiple punishments for the LAC–PD and LAC–PI charges under D.C.Code § 50–2201.05(a)(1) violated the Double Jeopardy Clause of the Fifth Amendment; (2) the variation in the date of the accident, as indicated on the charging documents, violated his Fifth Amendment rights under the Due Process Clause; and (3) the government failed to prove that the incident took place in the District of Columbia, and hence, the trial court lacked territorial jurisdiction.

After considering the intent of Congress in enacting § 10(a) of the Traffic Act, D.C.Code § 50–2201.05(a)(1), we are constrained to hold that the Fifth Amendment Double Jeopardy Clause precludes the trial court from imposing a penalty under

---

* Judge Reid's status changed to Associate Judge, Retired, on April 7, 2011.

1. The jury also convicted Mr. Lee on the charge of operating a motor vehicle without a permit, in violation of D.C.Code § 50–1401.01(d). The trial court sentenced him to thirty days on the LAC–PD charge, thirty days on the LAC–PI charge (to run concurrent with the sentence for LAC–PD), and ninety days on the no permit charge. The leaving after colliding convictions were to run consecutive to the permit conviction.

§ 10(a) of the Traffic Act for both LAC–PD and LAC–PI because Congress intended to punish a single offense—fleeing the scene of an accident without giving assistance and without providing the statutorily required information. We are unpersuaded by Mr. Lee's other arguments. Accordingly, we affirm Mr. Lee's convictions, but we remand this case with instructions to vacate either the LAC–PD or the LAC–PI conviction.[2]

## FACTUAL SUMMARY

The record reveals that on February 1, 2008, the District filed an information charging Mr. Lee with LAC–PD in an accident that took place "on or about September 15, 2007" in the "2800 block of New York Avenue N.E., Washington DC."[3] The information further alleged that:

> [Mr. Lee] did operate a vehicle and, having caused substantial damage to property therewith, fail to stop and give assistance, together with his[ ] name, place of residence, including street and number, and the name and address of the owner of the vehicle so operated, to the owner of such property, or did fail to immediately report the required information to a police station or to any officer within the District of Columbia, in violation of D.C.Code § 50–2201.05(a)(1) (2001), for which a penalty is provided in D.C.Code § 50–2201.05(a)(3) (2001).

On April 4, 2008, the government amended the information and charged Mr. Lee with LAC–PD, No Permit, and LAC–PI "on or about February 21, 2008" in the "2800 block of New York Avenue N.E., Washington DC." The LAC–PD allegations were identical to those in the February 1, 2008 charging document. The allegations regarding LAC–PI were as follows:

> [Mr. Lee] did operate a vehicle and, having injured any person therewith, [did] fail to stop and give assistance, together with his[ ] name, place of residence, including street and number, and the name and address of the owner of the vehicle so operated, or did fail to immediately report the required information to a police station or to any officer within the District of Columbia, in violation of D.C.Code § 50–2201.05(a)(1) (2001), for which a penalty is provided in D.C.Code § 50–2201.05(a)(2) (2001).

Mr. Lee's jury trial occurred in April 2008. Prior to selection of the jury, the trial judge and counsel for the government and for Mr. Lee discussed preliminary matters. In response to a question by the judge, government counsel stated that "[t]he accident occurred at the 2800 Block of New York Avenue, Northeast, Washington, D.C., September 15th...."[4] The judge also posed the following question: "The location of the offense has no significance, does it?" Neither counsel raised any issue about where the accident took place.

The government presented four witnesses: Charles Killens, Lance Armour, Ann Martin–Killens, and Metropolitan Police Department ("MPD") Officer Eric Brown. Mr. Killens recounted picking up

---

**2.** Since the trial court imposed the same thirty-day penalty of incarceration for LAC–PD and LAC–PI and declared that the two sentences would run concurrently, and in view of our rejection of Mr. Lee's other arguments, there may be no need for re-sentencing of Mr. Lee. We leave that decision to the trial court.

**3.** Although the information was filed February 1, 2008, Mr. Lee's arrest warrant was not issued until February 13, 2008 and he was not formally charged by the court until his hearing on February 21, 2008.

**4.** In her opening statement, government counsel reiterated the date and location of the accident.

his wife from her place of employment, on September 15, 2007, and driving past his home (he was separated from his wife) in the 500 block of R Street, N.W., where he saw his tenant, Mr. Lee, in front of the premises. As Mr. Killens continued driving, heading toward Annapolis, and as he crossed into the Northeast quadrant of the District, he noticed that Mr. Lee was following him.[5] When he crossed the intersection of New York Avenue and Bladensburg Road, Mr. Lee rear-ended him. Mr. Killens exited his vehicle and walked toward the back of it. In response, Mr. Lee backed up and moved around Mr. Killens's car and almost hit him; he did not stop to provide any information. Mr. Killens described the damage to his left bumper and rear door, as well as the injury to his neck and back which was treated by a chiropractor.

Mrs. Killens, who lived in Chevy Chase, Maryland, gave a similar account of the events that occurred on September 15, 2007. She saw Mr. Lee when his car passed by after the accident. Lance Amour, who did not know Mr. Lee or Mr. Killens, testified that he was driving his van on New York Avenue on September 15, 2007, when he saw one car run into another at Bladensburg Road. The driver of the vehicle that was hit yelled for someone to get the license number of the car that hit him; Mr. Amour took down the license number on the back of one of his business cards, wrote his name and cell phone number, and gave the card to the police officer on the scene.

Officer Brown was assigned to MPD's Fifth District as the "hit and run coordinator." He investigated the accident involving Mr. Killens, and interviewed Mr. Lee who claimed he drove a car belonging to his employer but was not driving it on the day of the accident. Officer Brown spoke with Mr. Lee's supervisor who indicated that Mr. Lee "would have had that car during [the] time [of the accident]." Furthermore, Officer Brown identified Mr. Lee's driving record which established that Mr. Lee did not have a valid District of Columbia driver's license. Officer Brown also located the car bearing the license number that Mr. Amour had recorded, and reported that the car had some damage that appeared "to be consistent with front-end damage."

The defense presented no witnesses. After closing arguments, jury instructions, and deliberations, the jury returned a guilty verdict on all charges.

## ANALYSIS

### The Double Jeopardy Issue

■ Mr. Lee complains that he "was charged twice, convicted twice and sentenced twice for violating § 50–2201.05(a)(1) with a single act of driving away after rear ending another car." He contends that he "was only charged with failing to stop at one accident" and that "convicting him and sentencing him [ ] twice for violating that same statute violated Double Jeopardy...." The District argues that the offenses of LAC–PD and LAC–PI do not merge because "[e]ach offense contains an element which the other does not."[6] The District further main-

---

5. Mr. Killens recognized the car as one that Mr. Lee drove, and he testified that he saw Mr. Lee. Mr. Lee and Mr. Killens were at odds because of Mr. Lee's non-payment of rent.

6. The District further declares that:

The offense of LAC–PD requires proof that the defendant, while operating a vehicle, caused substantial damage to property, and then left the scene without making his identity known. The offense of LAC–PI, on the other hand requires proof of personal injury rather than property damage. Also, unlike

tains that § 50–2201.05(a)(1) is a "victim-focused" statute; that "the essence of the LAC–PD and LAC–PI provisions is not simply a directive to remain at the scene of the accident," but "the essence ... is a directive to remain at the scene *and to provide assistance and identifying information to each of the victims*"; and that in this case "there were two victims of the collision—Mr. Killens who suffered injury, and Mrs. Killens, whose [car] was damaged."

■■■■ We have not previously addressed the precise issue presented in this case—whether a defendant can be convicted and punished for two separate offenses under § 10(a) of the Traffic Act, D.C.Code § 50–2201.05(a)(1)—LAC–PD and LAC–PI. We review a question involving statutory interpretation *de novo*. *Tippett v. Daly*, 10 A.3d 1123, 1126 (D.C.2010) (citing *Wemhoff v. District of Columbia*, 887 A.2d 1004, 1007 (D.C.2005)) (other citation omitted). "'The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used.'" *Id.* (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc)). "The literal words of [a] statute, however, are not the sole index to legislative intent, but rather, are to be read in light of the statute taken as a

whole...." *Jeffrey v. United States*, 892 A.2d 1122, 1128 (D.C.2006) (internal quotation marks and citations omitted).

■■■ As we search for the legislative intent behind § 50–2201.05(a)(1), we are reminded that "[i]t is Congress [or the local legislature], and not the prosecution, which establishes and defines offenses" and which determines "the 'allowable unit of prosecution.'" *Sanabria v. United States*, 437 U.S. 54, 69, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (citations omitted). "Unit of prosecution" cases generally focus on "whether the conduct at issue was intended to give rise to more than one offense under the same provision." [7] *United States v. McLaughlin*, 334 U.S.App.D.C. 1, 14, 164 F.3d at 1, 14 (1998) (citations omitted). "Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on ... congressional choice." *Sanabria, supra*, 437 U.S. at 70, 98 S.Ct. 2170 (footnote omitted). "[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221–22, 73 S.Ct. 227, 97 L.Ed. 260 (1952). Furthermore,

the LAC–PD provision, the LAC–PI provision requires that "[i]n all cases of accidents resulting in injury to any person, the operator of the vehicle causing such injury shall report the same to any police station or police officer within the District immediately."
(Citations omitted).

**7.** The test in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which generally is used to determine whether crimes set forth in two separate statutory provisions merge, does not apply to "unit of prosecution" cases. *See United States v. McLaughlin*, 334 U.S.App.D.C. 1, 14–15, 164

F.3d 1, 14–15 (1998) (citing *Sanabria, supra*, 437 U.S. at 70 n. 24, 98 S.Ct. 2170) (other citations omitted). *"Blockburger* is a tool of statutory construction that is utilized to determine whether prosecution under two distinct statutory provisions violates double jeopardy, but does not control 'where ... there is clear indication of a contrary legislative intent.'" *United States v. Rigas*, 605 F.3d 194, 207 n. 10 (3d Cir.2010) (internal quotation marks and citation omitted). "Plain language analysis on the other hand, is the appropriate tool of statutory construction that is utilized to determine whether Congress created distinct statutory provisions." *Id.*

"[w]hat Congress had made the allowable unit of prosecution ... cannot be answered merely by a literal reading of the penalizing sections." *Id.* at 221, 73 S.Ct. 227.

We now turn to the applicable statutory provision, D.C.Code § 50–2201.05(a)(1). This provision was enacted by Congress in 1925 as § 10(a) of the District of Columbia Traffic Act, 43 Stat. 1124, March 3, 1925. It currently reads:

(a)(1) Any person operating a vehicle, who shall injure any person therewith, or who shall do substantial damage to property therewith and fail to stop and give assistance, together with his name, place of residence, including street and number, and the name and address of the owner of the vehicle so operated, to the person so injured, or to the owner of such property so damaged, or to the operator of such other vehicle, or to any bystander who shall request such information on behalf of the injured person, or, if such owner or operator is not present, then he shall report the information above required to a police station or to any police officer within the District immediately. In all cases of accidents resulting in injury to any person, the operator of the vehicle causing such injury shall also report the same to any police station or police officer within the District immediately.

(2) Any operator whose vehicle causes personal injury to an individual and who fails to conform to the above requirements shall, upon conviction of the 1st offense, be fined not more than $500, or shall be imprisoned not more than 6 months, or both; and upon the conviction of his 2nd or subsequent offense, shall be fined not more than $1,000, or shall be imprisoned not more than 1 year, or both.

(3) Any operator whose vehicle causes substantial damage to any other vehicle or property and fails to conform to the above requirements, shall, upon conviction of the 1st offense, be fined not more than $100, or be imprisoned not more than 30 days, or both; and for the 2nd or any subsequent offense, be fined not more than $300, or be imprisoned not more than 90 days, or both.

As originally enacted § 10(a) specified:

(a) No individual while operating a motor vehicle in the District, knowing that such motor vehicle has struck any individual or any vehicle, or that such vehicle has been struck by any other vehicle, shall leave the place where the collision or injury occurred without stopping and giving his name, place of residence, including street and number, and registration and operator's permit numbers to the individual so struck or to the owner and operator of the other vehicle if such owner or operator is present, or if such owner or operator is not present then to bystanders. Any operator whose vehicle strikes or causes personal injury to an individual and who fails to conform to the requirements of this subdivision shall, upon conviction of the first offense be fined not less than $100 nor more than $500 and shall be imprisoned for a term of not less than sixty days and not more than six months; and upon the conviction of a second or subsequent offense shall be fined not less than $500 nor more than $1,000 and shall be imprisoned for a term of not less than six months nor more than one year. And any operator whose vehicle strikes or causes damage to any other vehicle and who fails to conform to the requirements of this subdivision shall upon conviction of the first offense be fined not more than $500 or imprisoned not more than six months, or both; and for the second or any other subsequent offense be fined

not more than $1,000 or imprisoned not more than one year, or both.

46 Stat. 1427, February 27, 1931. The language used in the first sentence of the original version of § 10(a) and the commas which separate the striking of an individual or vehicle from the act of fleeing the scene, leave no doubt that Congress intended to punish the act of leaving the scene of an accident without providing certain required information: "No individual while operating a motor vehicle in the District, knowing that such motor vehicle has struck any individual or any vehicle, ... shall leave the place where the collision or injury occurred without stopping and giving his name, place of residence, including street and number...."

Congress amended § 10(a) in 1931. The amendments added the words "who shall injure any person" and "substantial damage" to the first sentence of § 10(a), apparently to make a clearer link between the prohibition part of the statutory provision and the penalty part in which Congress had used the words "personal injury" and "damage." The amendments also incorporated the requirement that a motorist who struck an individual or a car not only must stop but also must "give assistance." Furthermore the amendments clarified that instead of leaving the required information with a bystander under certain circumstances, the information should be reported "immediately" "to a police station or a police officer within the District." These amendments did not alter Congress's clear intent to punish drivers who flee the scene of an accident. Indeed, the United States Court of Appeals for the District of Columbia recognized this clear congressional intent in *Oden v. District of Columbia,* 65 App.D.C. 50, 51, 79 F.2d 175, 176 (1935), after the 1931 amendments, when it described § 10(a) as a "hit and run statute." That court said:

The object and purpose of the "hit and run" statute is to prevent persons involved in a collision from escaping detection, and also to assure the procuring of information which will insure complete identification of the party, the car, and the location of his residence. While it requires information which may be used in a suit for damages, it may not be used any more than any other criminal statute as a vehicle to force unwilling settlement of a civil claim....

65 App.D.C. at 51, 79 F.2d at 176; *see also Seher v. District of Columbia,* 68 App.D.C. 207, 208, 95 F.2d 118, 119 (1938) ("the statute makes it punishable by fine or imprisonment or both for the operator of a motor vehicle to flee from the scene of an accident"). In subsequent years, this court asserted that § 10(a) reflects Congress's intent to punish drivers who flee the scene of an accident without providing required information after injuring a person or damaging a vehicle. *See Russell v. District of Columbia,* 118 A.2d 519, 520 (D.C. 1955) ("This statute makes it a crime for an automobile operator who has caused 'substantial damage' to property to leave the scene without first making his identity known."); *Scott v. District of Columbia,* 55 A.2d 854, 855 (D.C.1947) ("Congress in framing this statute intended to discourage and punish 'hit and run' drivers.").

The remaining question is whether Congress intended to create two separate offenses within the same statutory provision, that is, whether the conduct Congress chose to punish under § 10(a)—fleeing the scene of an accident without leaving the required information—"involves one or more distinct 'offenses.' " *Sanabria, supra,* 437 U.S. at 70, 98 S.Ct. 2170. We cannot agree with the District that § 10(a) is a "victim-specific" or "victim-focused" statute rather than an "accident-focused" stat-

ute. The fact that the penalty part of § 10(a) provides different penalties for fleeing the scene, after driving a car that injures a person or driving a car that substantially damages another vehicle, is not an indication that Congress chose to create two offenses in one statutory provision. As the court announced in *Universal C.I.T. Credit Corp., supra:* "What Congress had made the allowable unit of prosecution ... cannot be answered merely by a literal reading of the penalizing sections." 344 U.S. at 221–22, 73 S.Ct. 227.

Even though the penalties imposed for fleeing after injuring a person and fleeing after damaging a vehicle do not reflect Congress's intent with regard to the unit of prosecution, we are still faced with Mr. Lee's and the government's different views of Congress's intent in enacting § 10(a) of the Traffic Act. In determining which view reflects Congress's intent, we heed the admonition that "before we choose the harsher alternative"[8] "it is appropriate ... that Congress should have spoken in language that is clear and definite." *Universal C.I.T. Credit Corp., supra,* 344 U.S. at 221–22, 73 S.Ct. 227. We conclude that the language used by Congress in § 10(a) does not reflect a clear and definite intent to punish two or more offenses rather than one offense. In the original version of the first sentence of § 10(a), Congress used the language "has struck any individual or any vehicle"; and in part of the 1931 amendment of that sentence, Congress replaced that language with "who shall injure any person therewith, or who shall do substantial damage to property therewith."

Significantly, by using "or" Congress provided two alternative ways of punishing an individual for a single offense—fleeing the scene without providing required information after injuring a person, or after damaging property. *See Rigas, supra,* 605 F.3d at 208 ("Congress' use of disjunctive language creates alternative ways of violating a statute").

In sum, after reviewing the original and amended language of § 10(a), we are constrained to hold that the Fifth Amendment Double Jeopardy Clause precludes the trial court from imposing a penalty under § 10(a) of the Traffic Act for both LAC–PD and LAC–PI because Congress intended to punish a single offense— fleeing the scene of an accident without giving assistance and without providing the statutorily required information. Section 10(a) specifies two alternative ways in which a driver can commit the offense— fleeing after colliding and injuring a person, and fleeing after colliding and damaging property. Accordingly, we must remand this case to the trial court with instructions to vacate either the LAC–PD or the LAC–PI conviction.

### The Other Issues

We dispose of Mr. Lee's other contentions summarily. He asserts that "[t]he charging document alleges that [he] committed criminal acts on February 21, 2008[,]" but "[t]he prosecution submitted evidence of occurrences happening on September 15, 2007 and then asked for a conviction for actions that took place on February 21, 2008." Consequently, he ar-

---

8. Under the District's victim-focused interpretation of § 10(a), a person who flees the scene without leaving the required information after colliding and injuring multiple persons and causing damage to more than one vehicle could face stiff penalties. *See Arizona v. Powers,* 200 Ariz. 123, 23 P.3d 668, 671 (App. 2001) ("basing the number of violations of leaving the scene of an accident on the number of violations of [the statutory duty to give information and assistance] would, in effect, increase without legislative directive the penalty for a violation of [that statutory duty] from a misdemeanor to a felony in leaving-the-accident-scene cases"), *aff'd,* 200 Ariz. 363, 26 P.3d 1134 (2001).

gues that he "had no chance to defend himself and faces charges again for the same incident." In essence, he claims a prejudicial variance between the charges and the proof.

 "A variance of proof ... will not require reversal and dismissal unless there is prejudice." *Wooley v. United States,* 697 A.2d 777, 779 (D.C.1997) (citations omitted); *see also Johnson v. United States,* 613 A.2d 1381, 1385 (D.C.1992) ("A variance ... implicates notice and double jeopardy guarantees and requires reversal only upon a showing of prejudice") (citations omitted). "In the absence of a timely objection to the variance, the burden is on the appellant to show actual prejudice." *Scutchings v. United States,* 509 A.2d 634, 637 (D.C.1986) (citation omitted). "When [an information] charges that the offense occurred 'on or about' a certain date, as it did here, a defendant is on notice that a *particular* date is not critical. The evidence will conform to the [information] in such circumstances if it establishes that the offense was committed on a date reasonably close to the one alleged." *Williams v. United States,* 859 A.2d 130, 141 (D.C.2004) (citations and internal quotation marks omitted). "If it is clear from the record that the accused was not misled by the evidence and could not be retried for the same events, the 'notice' and 'double jeopardy' concerns underlying the variance between the charge and the evidence will have been satisfied." *Wooley, supra,* 697 A.2d at 779 (citations omitted).

Here, the charging document dated February 1, 2008 accused Mr. Lee of LAC–PD "on or about September 15, 2007." The amended information, dated April 4, 2008, charged Mr. Lee with LAC–PD, No Permit, and LAC–PI "on or about February 21, 2008." Nevertheless, the transcripts of the proceedings against Mr. Lee establish that he was well aware that the date of the accident was September 15, 2007, and he never raised any concern or objection with respect to the amended information and the date of February 21, 2008. Prior to the voir dire of prospective members of the jury, the judge and the counsel met and in response to a question from the trial judge, government counsel stated: "The accident occurred at the 2800 Block of New York Avenue, Northeast, Washington, D.C., September 15th, 2007...." Government counsel's opening statement reiterated that the accident occurred on September 15, 2007. The government's first witness, Mr. Killens, also identified the date of the accident as September 15, 2007. Government counsel referenced the September 15, 2007 date, not the February 21, 2008 date, during the testimony of Mr. Armour and Ms. Killens, and again during her closing argument. At no time did Mr. Lee voice any concern about the dates in the information. Clearly, the February 21, 2008 date in the amended information was an error that was corrected orally more than once. In addition, both the information and amended information used the phrase "on or about" and the February 21, 2008 date was reasonably close to the September 15, 2007 date; both the information and the amended information informed Mr. Lee of the precise charges against him; he had an opportunity to defend himself against the charges; and all of the evidence presented by the government proved that his criminal conduct took place on September 15, 2007. Under these circumstances there is no danger that Mr. Lee will be tried again for the same conduct on September 15, 2007, and we discern no prejudice. *See Peay v. United States,* 924 A.2d 1023, 1028 (D.C.2007) ("there was no material discrepancy between the facts introduced at trial and those contained in the [information]" and appellant "has failed to demonstrate any prejudice that would warrant reversal"); *Roberts v. United States,* 752

A.2d 583, 593 (D.C.2000) (failure to object to [information], request continuance, or claim surprise demonstrated lack of prejudice).

Finally, Lee claims that "[t]here was no testimony that the acts in question occurred in the District of Columbia" and hence the trial court lacked territorial jurisdiction. "There is a presumption that an offense charged was committed within the jurisdiction of the court in which the charge is filed unless the evidence affirmatively shows otherwise." *Joiner–Die v. United States*, 899 A.2d 762, 766 (D.C.2006) (citation and internal quotation marks omitted). The evidence clearly established that the acts at issue in this case took place in the Northeast quadrant of the District. Moreover, Mr. Lee "has made no affirmative showing that the offense[s] occurred outside of the District of Columbia." *Id.*

Accordingly, for the foregoing reasons, we affirm Mr. Lee's convictions, but we remand this case to the trial court with instructions to vacate either the LAC–PD or the LAC–PI conviction.

*So ordered.*